The State of Alabama filed this petition for a writ of mandamus directing the Honorable James B. Smith, circuit judge for the Twenty-third Judicial Circuit, to vacate his order denying the State's request to call Jimmy Shane Click as a witness at the evidentiary hearing on Click's postconviction petition. Click was convicted of capital murder and was sentenced to life in prison without the possibility of parole. His conviction was affirmed on direct appeal. Click v. State, 695 So.2d 209 (Ala.Cr.App. 1996), cert. denied, 522 U.S. 1001 (1997). In October 1998, Click filed a postconviction petition attacking his conviction and sentence. The trial court summarily dismissed the petition. On appeal, we remanded the cause to the Circuit Court for Madison County for that court to hold a hearing on Click's allegations that his counsel's performance was ineffective.[1] *Page 418 
See Click v. State, [Ms. CR-98-0861, August 27, 1999] ___ So.2d ___ (Ala.Cr.App. 1999). Pursuant to our instruction, an evidentiary hearing was scheduled. The State attempted to call Click to testify concerning the allegations he made in his petition. Judge Smith denied the State's request, stating that to call Click to testify would violate his Fifth Amendment privilege against self-incrimination. The State then filed this petition. Judge Smith stayed all action in the circuit court until this Court could dispose of this mandamus petition.
The State, represented by the district attorney's office for Madison County, asserts that it would be denied the "ability to fairly and accurately present its case in said evidentiary hearing" if it is not allowed to call Click to testify. Specifically, it asserts that Rule 32.9(b), Ala.R.Crim.P., provides that the State has the right to call the petitioner. This rules states, "The petitioner may be called to testify at the hearing by the court or by either party." It contends that if Click files a postconviction petition he should be subject to all of the provisions of Rule 32, Ala.R.Crim.P.
The attorney general's office moved to intervene; the motion was granted; and the attorney general filed a brief in support of the petitioner's position. The attorney general argues that the Fifth Amendment privilege against self-incrimination does not apply to a postconviction proceeding because the defendant has already been tried and convicted and has already filed a direct appeal for the offense in question.
Click argues that to compel him to testify at the postconviction hearing would violate his constitutional rights. He asserts, citing Wilson v. State, 690 So.2d 449 (Ala.Cr.App. 1995), aff'd in part, quashed in part, 690 So.2d 477 (Ala. 1997), that this State has recognized that the Fifth Amendment privilege to remain silent is not waived in postconviction proceedings and that postconviction proceedings are criminal proceedings in which a defendant is afforded all of the constitutional rights afforded an accused. Click further asserts that other states have held that the Fifth Amendment privilege is not waived in a postconviction proceeding. See Nichols v. Collins, 802 F. Supp. 66
(S.D. Tex. 1992), aff'd in part, rev'd in part, Nichols v. Scott,69 F.3d 1255 (5th Cir. 1995), cert. denied, Nichols v. Johnson,518 U.S. 1022 (1996). He last contends that the information the State seeks — the content of the discussions between Click and his attorneys — is privileged information and its disclosure would result in a violation of the attorney-client privilege that exists between Click and his trial counsel.
The Fifth Amendment to the United States Constitution provides:
 "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising *Page 419 
in the land or naval forces or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."
(Emphasis added.) See also Art. I, § 6, Ala. Const. 1901.
Initially, we observe that this Court has held that postconviction proceedings are civil proceedings and not criminal proceedings as Click contends. See Carroll v. State, 462 So.2d 789
(Ala.Cr.App. 1984) ("Coram nobis is treated procedurally as a cross between a civil and a criminal action; it is a new civil action."[2]); Hobson v. State, 425 So.2d 511 (Ala.Cr.App. 1982) ("even though a coram nobis petition seeks relief from a criminal judgment, it is a civil proceeding."); Behel v. State,405 So.2d 51 (Ala.Cr.App. 1981) ("Coram nobis proceedings are civil in nature and the burden of proof is on appellant to show that he [is] entitled to relief."); Pittman v. State, 50 Ala. App. 712,282 So.2d 332 (1973), opinion supplemented, 52 Ala. App. 708,295 So.2d 431 (1974) (coram nobis is "independent civil proceeding").
The United States Supreme Court has also recognized that postconviction proceedings are civil in nature. In Pennsylvaniav. Finley, 481 U.S. 551, 556-57 (1987), that Court stated:
 "Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. See Fay v. Noia, 372 U.S. 391, 423-23, 83 S.Ct. 822, 841, 9 L.Ed.2d 837 (1963). It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, cf. United States v. MacCollom, 426 U.S. 317, 323, 96 S.Ct. 2086, 2090-2091, 48 L.Ed.2d 666
(1976). . . ."
The wording of Rule 32, Ala.R.Crim.P., further supports this Court's conclusion that Rule 32 proceedings are civil in nature. First, there is no right to counsel in a postconviction proceeding, Mayes v. State, 563 So.2d 38 (Ala.Cr.App. 1990), and Rule 32.7(c), Ala.R.Crim.P.; second, the action is commenced by the defendant's filing a petition for postconviction relief in the county where he was convicted, Rule 32.6(a), Ala.R.Crim.P.; third, the inmate must either pay a civil court filing fee or apply for indigency status, Rule 32.6(a), Ala.R.Crim.P.; and fourth, the petitioner bears the burden of proving that he is entitled to relief, Rule 32.3, Ala.R.Crim.P.
The fact that postconviction proceedings are civil actions does not resolve the issue whether the Fifth Amendment privilege against self-incrimination applies to postconviction proceedings. The United States Supreme Court in Lefkowitz v. Cunningham,431 U.S. 801 (1977), held that the Fifth Amendment to the United States Constitution applies to civil cases. This state has cited the Lefkowitz case. See Ex parte Weems, 711 So.2d 1011 (Ala. 1998).
Click contends that Alabama has previously recognized that the Fifth Amendment may be invoked in postconviction proceedings. He cites Wilson, supra, for this proposition. However, Click fails to consider the circumstances surrounding the Wilson case. In Wilson, a postconviction petition had been filed based on James White's, Wilson's codefendant, recantation of his trial testimony. White, when called to the stand at the postconviction *Page 420 
hearing, invoked his Fifth Amendment privilege against self-incrimination. White faced criminal charges for perjury for lying under oath at Wilson's trial; thus, there was a "real and appreciable" danger that he would face prosecution for the offense for which he sought the constitutional protection. Click's reliance on Wilson is misplaced.
The issue is not whether the underlying action is civil or criminal but whether the risk of Click's facing criminal liability because of his testimony at the postconviction hearing is "real and appreciable." We cite with approval the Supreme Court of Oregon's decision in State v. Barone, 329 Or. 210, 232,986 P.2d 5, 20 (1999), petition for cert. filed, [No. 99-6753, October 26, 1999]:
 "[T]he question before us is whether a witness, who has been convicted of a crime and has exhausted his direct appeals from that crime, nevertheless possesses a privilege against self-incrimination and may refuse to answer questions about the crime, if he intends at some time in the future to attack his conviction through post-conviction or habeas corpus proceedings. We conclude that a witness does not possess a privilege against self-incrimination under those circumstances. The Fifth Amendment privilege against self-incrimination protects witnesses from the danger of exposing themselves to criminal liability. The privilege applies where the risk of self-incrimination is `real and appreciable,' not `remote and improbable.' Brown v. Walker, 161 U.S. 591, 599-600, 16 S.Ct. 644, 40 L.Ed.819 (1896); see also Rogers v. United States, 340 U.S. 367, 372-73, 71 S.Ct. 438, 95 L.Ed. 344 (1951) (to the same effect). Here, Darcell's asserted risk of self-incrimination was neither `real' nor `appreciable', because at the time when he claimed the privilege, Darcell already had been convicted of the charge for which he feared prosecution. He could not incriminate himself further by answering questions about a crime for which he already had been convicted and sentenced and for which his direct appeals were exhausted. See Mitchell v. United States, 526 U.S. 314, 329, 119 S.Ct. 1307, 1314, 143 L.Ed.2d 424 (1999) (`It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final.'); Reina v. United States, 364 U.S. 507, 513, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960) (citing `weighty authority' for the proposition that, `once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime. . . .')."
See also Carroll v. State, [Nos. 2-95-467-CR, 2-95-468-CR, November 8, 1999] 12 S.W.2d 92 (Tex.App. 1999). Alabama has followed the reasoning of the Oregon Supreme Court. See Ex partePrice, 707 So.2d 1105 (Ala. 1997), quoting Ex parte Baugh,530 So.2d 238, 240 n. 2 (Ala. 1988) ("A party may claim a Fifth Amendment privilege if he or she `reasonably apprehends a risk of self-incrimination.'").
The great weight of the United States Supreme Court's opinions supports the proposition that once a defendant has been convicted for a crime and his direct appeal from that conviction is final, a defendant no longer has a privilege against self-incrimination. The United States Supreme Court recently inMitchell v. United States, 526 U.S. 314 (1999), addressed whether the Fifth Amendment privilege applies to sentencing hearings. The Court held that a sentencing hearing is a crucial part of the criminal trial; thus, the defendant has the protection of the Fifth Amendment at that stage. However, the Court noted, "It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become *Page 421 
final." The Court also cited with approval its earlier decision in Reina v. United States, 364 U.S. 507 (1960), in which that Court stated that there is "weighty authority" for the proposition that once a person is convicted he no longer has a privilege against self-incrimination. 364 U.S. at 513. Also, the United States Supreme Court has recognized that an inmate who voluntarily participates in a clemency proceeding has no right to invoke his Fifth Amendment privilege against self-incrimination, because his testimony is not "compelled." See Ohio Adult ParoleAuthority v. Woodard, 523 U.S. 272 (1998). In Woodard, the Court stated:
 "Long ago we held that a defendant who took the stand in his own defense could not claim the privilege against self-incrimination when the prosecution sought to cross-examine him. Brown v. Walker, 161 U.S. 591, 597-98, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896); Brown v. United States, 356 U.S. 148, 154-55, 78 S.Ct. 622, 626-27, 2 L.Ed.2d 589 (1958). A defendant who takes the stand in his own behalf may be impeached by proof of prior convictions without violation of the Fifth Amendment privilege."
523 U.S. at 286-87.
Click voluntarily filed the postconviction petition attacking his conviction and sentence. In Alabama, a postconviction proceeding is a voluntary action commenced by a defendant, not a criminal action commenced by the state against a defendant. Certainly, the voluntary nature of the action lends further support for the conclusion that postconviction proceedings are not "compelled" proceedings within the meaning of the Fifth Amendment. See Woodard.
Here, Click has been convicted and sentenced, and his conviction has been affirmed on direct appeal. He voluntarily filed a postconviction petition. The possibility that Click will face criminal liability by answering questions about his trial counsel's performance in this postconviction proceeding is "remote and improbable." See Barone, supra. Certainly, the State would be put in an untenable position if it could not call the petitioner to the stand to refute the allegations that he alone has asserted in his petition. The drafters of Rule 32, Ala.R.Crim.P., were aware of such possible difficulties when they drafted Rule 32.9(b), which specifically gives the State the right to call the petitioner as a witness at the hearing.
We hold that, under the circumstances presented by this case, the Fifth Amendment privilege against self-incrimination does not apply to Click's postconviction hearing testimony. For purposes of this case, we adopt the reasoning of the United States Supreme Court in the cases cited above and the Oregon Supreme Court inBarone, supra.
We are aware of our decision in Barnes v. State, 621 So.2d 329
(Ala.Cr.App. 1992), in which we recognized a defendant's right to file a postconviction petition during the pendency of a direct appeal. Here, we do not have occasion to address whether a petitioner who files a postconviction petition during the pendency of a direct appeal, and whose direct appeal is stayed pursuant toBarnes, may assert his privilege against self-incrimination during a postconviction hearing.
Click further argues that he should not be forced to testify because, he says, the matters which the State seeks to question him concerning will result in violating the attorney-client privilege. Click raised a multitude of allegations in his postconviction petition that his attorney's conduct, both at trial and on appeal, was ineffective. (See footnote 1, which enumerates the allegations made.) A postconviction petitioner who raises a Sixth Amendment claim of ineffective assistance of counsel "waives the attorney-client privilege as to matters reasonably related to the claim of inadequate representation." United States v.Mansfield, 33 M.J. 972, 984 (A.F.C.M.R. 1991), review granted, 37 M.J. 246 (C.M.A.), aff'd, 38 M.J. 415 (C.M.A. 1993), cert. denied,511 U.S. 1052, 114 S.Ct. 1610, *Page 422 128 L.Ed.2d 338 (1994). McElroy's Alabama Evidence states:
 "If the client charges the attorney with misconduct, the privilege is lifted insofar as is necessary to enable the attorney to combat the charge. This would necessarily mean that the client could not base a lawsuit against the attorney upon the negligence of the attorney's advice and then object when the attorney attempts to testify as to the attorney's own version of what was said. This would open the door, of course, to only so much of the privileged matter that is relevant and necessary to the attorney's defense."
Charles W. Gamble, McElroy's Alabama Evidence, § 394.01(3) (5th ed. 1996). See also Rule 502(d)(3), Ala.R.Evid., which provides that there is no attorney-client privilege, "[a]s to a communication relevant to an issue of breach of duty by an attorney to the client or by a client to the client's attorney." This argument is without merit.
For the reasons stated above, Judge Smith erred in refusing to allow the State to call Click to testify at the evidentiary hearing on his postconviction petition. This petition is due to be granted.
PETITION GRANTED.
McMillan, Cobb, Baschab, and Fry, JJ., concur.
[1] Click argues that his trial counsel's and his appellate counsel's performances were ineffective because, he says, counsel:
 (1) Failed to raise the claim that Click was incompetent to stand trial;
 (2) Failed to raise the claim that the prosecution had improperly commented on Click's right to remain silent;
 (3) Failed to object that mental health counselor was not qualified to testify about Click's mental state at the time of the murder and at the time he interviewed Click;
 (4) Failed to argue that the doctor who gave his opinion about Click's mental condition had improperly relied on police reports and statements of codefendants;
 (5) Failed to raise as an issue whether Click had a right to have his medication suspended during the trial and whether the jury should have been instructed that Click's demeanor was the result of the medication he was taking;
 (6) Failed to challenge the standard used for overturning a jury's verdict in a case where a defendant pleads not guilty by reason of mental disease or defect;
 (7) Failed to ensure that Click's mother's testimony that he had been diagnosed with a mental illness was introduced into evidence;
 (8) Failed to object to improper arguments of the prosecutor;
(9) Failed to suppress a statement Click had made;
 (10) Failed to adequately argue the motion for a judgment of acquittal;
 (11) Failed to challenge the striking of a prospective juror based on her religious beliefs; and
 (12) Failed to timely file notice of appeal from the juvenile transfer order.
[2] A coram nobis proceeding was the predecessor to Rule 20, Ala.R.Crim.P.Temp., now Rule 32, Ala.R.Crim.P.