769 So.2d 457 (2000)
Marshall Guadalupe LANDEVERDE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-1879.
District Court of Appeal of Florida, Fourth District.
October 11, 2000.
*459 Rosemarie Richard of Richard & Richard, Attorneys At Law, P.A., Stuart, and Robert G. Udell, P.A., Stuart, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda Melear, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Marshall Landeverde appeals from his conviction of first degree murder and two counts of burglary of a dwelling. He raises three points of error: (1) denial of the motion to suppress his confession; (2) failure to give jury instructions on the independent act theory; and (3) refusal to compel the testimony of his co-defendants. After reviewing the record and carefully considering appellant's arguments on all of these issues, we conclude that the trial court committed no reversible error and affirm the judgments of conviction.
First, we find no error in the trial court's denial of appellant's motion to suppress his confession. The record supports the trial court's determination that appellant initiated conversation with the officer after invoking his rights and that his second statement was voluntary. Second, we determine that the trial court properly declined to give instructions on the independent act theory, because there was no evidence that the co-defendant who shot *460 the victim acted independently from appellant. Rather, the evidence showed that the shooter acted in furtherance of the burglary and theft in which appellant participated. Third, we conclude that the trial court did not err in refusing to compel the co-defendants to testify at appellant's trial over the co-defendants' assertion of their Fifth Amendment privilege against self-incrimination. We discuss our resolution of this claim more fully below.

FACTUAL BACKGROUND
On January 13, 1998, appellant, Raymond Carver, Israel Cuevas, and Ronald Demedicus drove around looking for a vacant house to burglarize. They came upon the victim's house, which was in a secluded wooded area. They approached the house and knocked. After determining that no one was home, the men entered the house. They noticed black curtains covering the windows and, once inside, saw nothing but marijuana. The four men had unknowingly selected a marijuana growing house. They immediately began removing quantities of marijuana from the house.
The next day, on January 14, the men decided to break in again and steal more marijuana. However, finding that someone was home, they abandoned the plan. On January 15, appellant and Carver reentered the house. Appellant carried a knife; he knew that Carver was carrying a gun. Appellant remained downstairs cutting marijuana plants and stuffing them in bags while Carver went upstairs. While cutting the marijuana, appellant heard gunshots. Afraid that Carver had been shot, appellant called out to him. Appellant went upstairs and discovered that Carver had shot and stabbed the owner of the home, Christian Giotis. Appellant and Carver left the house with the marijuana and searched the victim's truck for other valuables.
Carver was indicted on a charge of first degree murder. He went to trial and was found guilty of first degree murder and sentenced to a term of life imprisonment. Demedicus was charged with murder and two counts of burglary. He pled no contest to manslaughter and burglary and received a twelve-year sentence. Cuevas was charged with second degree murder and two counts of burglary. Pursuant to a plea agreement, the state nolle prossed the murder count upon Cuevas' no contest plea to the burglaries. Cuevas was placed on two years of community control. Appellant was found guilty by a jury of first degree felony murder and two counts of burglary of a dwelling. He was sentenced to life in prison without parole.
At trial appellant attempted to call co-defendants Carver, Demedicus, and Cuevas as witnesses. Each prospective witness asserted his Fifth Amendment privilege against self-incrimination at a hearing held outside the presence of the jury. Appellant's trial counsel advised the co-defendants that he intended to ask them questions about the Giotis incident and any discussions between them prior to commission of the crimes. Based on his pending appeal, Carver invoked his Fifth Amendment privilege and refused to testify. Demedicus, who had cooperated with the state after entering his plea and filed a motion to modify his sentence, also asserted a Fifth Amendment privilege not to testify. Cuevas did not have any appeals or post-sentencing motions pending at the time of appellant's trial, but he nevertheless refused to testify on Fifth Amendment grounds. The trial court sustained all three co-defendants' invocation of the privilege and denied appellant's motion to hold them in contempt for refusing to testify. Appellant objected, contending that the court's ruling impaired his right under the Sixth Amendment to present witnesses in his defense and that this right overrode the co-defendants' claim of a Fifth Amendment privilege.

DISCUSSION

Testimony of Carver
Both parties agree that under Landenberger v. State, 519 So.2d 712 (Fla. 1st *461 DCA 1988), the trial court properly denied appellant's motion to hold Carver in contempt. Landenberger held that "[i]n the absence of a promise of immunity, a convicted felon with an appeal pending has a Fifth Amendment privilege not to testify, and this privilege continues throughout the pendency of the appeal." Id. at 713 (emphasis supplied); see also King v. State, 353 So.2d 180 (Fla. 3d DCA 1977).

Testimony of Cuevas
Cuevas' assertion of a Fifth Amendment privilege is more problematic. Appellant's trial counsel objected to Cuevas' claim of a privilege, arguing that Cuevas had no reason to fear further prosecution in light of his prior plea and sentence. He urged the trial court to compel Cuevas to testify at appellant's trial.
A criminal defendant has the right to compulsory process to obtain the appearance of witnesses to testify on his behalf. This right is an essential attribute of our adversarial system and a fundamental element of due process of law. Taylor v. Illinois, 484 U.S. 400, 407-409, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); State v. Reeves, 444 So.2d 20, 23 (Fla. 2d DCA 1983)(Sixth Amendment rights of confrontation and compulsory process are fundamental in nature and obligatory on the states under the due process clause of the Fourteenth Amendment). However, "when the Fifth Amendment guarantee collides with the Sixth Amendment ... the Sixth Amendment right must yield because to require one to incriminate himself in order to afford help to another would be both unwise and unrealistic." Walden v. State, 284 So.2d 440, 441 (Fla. 3d DCA 1973); Talavera v. State, 227 So.2d 493 (Fla. 2d DCA 1969), quashed in part on other grounds, 243 So.2d 595 (Fla.1971). See also Kastigar v. United States, 406 U.S. 441, 444-45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)(The power to compel testimony is subject to the exemption of testimony privileged under the Fifth Amendment); Hoffman v. United States, 341 U.S. 479, 490, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)(The evils of compulsory self-incrimination transcend any difficulties that exercise of the Fifth Amendment privilege may impose upon society in the prosecution and detection of crime); United States v. Cuthel, 903 F.2d 1381, 1384 (11th Cir.1990)(The conflict between a defendant's right to compel testimony and a witness' Fifth Amendment privilege has been resolved in favor of the latter). See also Brown v. State, 729 A.2d 259 (Del.1999).
In resolving the conflict between a defendant's right to compel testimony and a witness' Fifth Amendment privilege, the trial court must first determine whether the witness can validly assert a Fifth Amendment claim. In this regard, the trial court must evaluate whether a witness invoking a Fifth Amendment privilege "is confronted by substantial and `real,' and not merely trifling or imaginary hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). This is a question of law for the court to decide upon a voir dire examination. Talavera, 227 So.2d at 495-6 (footnotes omitted); ex rel. Feldman v. Kelly, 76 So.2d 798, 800 (Fla.1954).
Appellant argued that Cuevas had no justifiable fear of self-incrimination because he had already pled to his charges and been sentenced. Counsel for Cuevas countered that his trial testimony could possibly subject him to new criminal charges arising out of the incident. Additionally, he argued that Cuevas' testimony regarding his role in the crimes could result in a greater sentence if he were to violate his community control. If facts previously undisclosed during his plea proceeding were revealed at appellant's trial and then brought forth at his sentencing for revocation of community control, Cuevas could receive a prison term. After reviewing the recent holding of the United States Supreme Court in Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), the trial court agreed *462 that Cuevas could suffer adverse consequences as a result of being required to testify and sustained Cuevas' assertion of his Fifth Amendment privilege.
In Mitchell, the Supreme Court resolved the conflict among the federal circuits as to whether a guilty plea waives the privilege against self incrimination in the sentencing phase of a criminal case.[1] The Court held that the privilege does not end upon adjudication of guilt and continues until the sentence has been imposed. "It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege." Id. at 326. The Court concluded, however, that this principle applies "to cases in which the sentence has been fixed and the judgment of conviction has become final." Id. "If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared." Id. Mitchell significantly extended the traditional scope of the Fifth Amendment privilege, declaring that the privilege applies past the possibility of a criminal prosecution and includes situations involving a potential enhancement of sentence.
We begin our analysis of Mitchell's applicability to Cuevas' assertion of a Fifth Amendment privilege by inquiring whether a defendant placed on a "straight" term of community control or probation has been "sentenced" such that he loses the right to invoke his or her Fifth Amendment privilege against self-incrimination. Has a defendant who, at sentencing, received only probation or community control been given a "fixed" sentence such that "no adverse consequences can be visited upon the convicted person by reason of further testimony?"
Under Florida law, a probationary period is generally not considered a "sentence." See State v. Summers, 642 So.2d 742, 744 (Fla.1994)(citing Villery v. Florida Parole & Probation Comm'n, 396 So.2d 1107 (Fla.1980) and Committee Note, Fla. R.Crim. P. 3.790). "A sentence and probation are discrete concepts which serve wholly different functions." Villery, 396 So.2d at 1110. Probation is a form of community supervision, with rehabilitation, rather than punishment, as its underlying purpose. Id.; Martin v. State, 243 So.2d 189 (Fla. 4th DCA 1971). A defendant is placed on probation if "it appears to the court ... that the defendant is not likely again to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law." § 948.01(2), Fla. Stat. (1997). The "penalty" is generally a fine or a sentence of imprisonment or both. Villery, 396 So.2d at 1110. When a defendant is placed on probation, the court must stay and withhold the imposition of sentence regardless of whether adjudication of guilt is withheld. § 948.01(2), Fla. Stat.; Fla. R.Crim. P. 3.790(a). Id.[2]
Chapter 948 draws clear distinctions between the term of a sentence and the period of probation. Thus, in a technical sense, a trial court is not authorized to sentence a defendant to probation. See Lennard v. State, 308 So.2d 579 (Fla. 4th DCA 1975) (citing Brown v. State, 302 So.2d 430 (Fla. 4th DCA 1974)). In Brown, we stated:
A court may impose a sentence of imprisonment or fine upon a defendant found guilty of an offense, or it may withhold sentence in whole or in part and place defendant on probation, but it *463 cannot sentence defendant to probation, since withholding of sentence or a portion thereof is an indispensable prerequisite to entry of an order placing a defendant on probation.
302 So.2d at 432.
We further explained that:
If a defendant could be sentenced to probation, there would no judicial recourse in the event the defendant violated his probation. Because the court has already passed sentence, there would be no lawful basis for the imposition of punishment for the violation of the conditions of probation. However, as Chapter 948 envisions, when a sentence or a portion thereof is withheld, there would be a lawful basis for the imposition of punishment for the violation of a condition of probation, namely, the withheld sentence.
Id.[3]
Because an order of probation or community control placement "withholds the imposition of sentence" and is subject to modification, it is not a "fixed" sentence within the meaning of Mitchell. While a defendant is on probation or community control, the trial judge retains jurisdiction over the defendant until the period of probation or community control expires. See Clark v. State, 402 So.2d 43 (Fla. 4th DCA 1981). If a defendant violates terms and conditions of supervision, the court can revoke the defendant's probation or community control. In such event, the court may "impose any sentence which it might have originally imposed before placing the probationer on probation or the offender into community control." § 948.06(1), Fla. Stat. (1997). This is so even when a defendant violates terms of probation on which he or she was placed pursuant to a plea bargain. Bilyou v. State, 404 So.2d 744 (Fla.1981); State v. Parrish, 616 So.2d 1135 (Fla. 3d DCA 1993).
When sentencing a defendant after revocation of probation or community control, a trial court may, under certain circumstances, consider new facts relevant to the underlying offense that were not previously considered by the court at the time it imposed the original sentence. These newly disclosed facts can result in greater sentences without violating double jeopardy principles. For instance, the court can consider prior convictions that were mistakenly omitted from the original sentencing scoresheet. Roberts v. State, 644 So.2d 81 (Fla.1994). The trial court can also score victim-injury points upon revocation of community control, even though the original sentence did not reflect such assessment. Merkt v. State, 764 So.2d 865 (Fla. 4th DCA 2000); Echols v. State, 660 So.2d 782 (Fla. 4th DCA 1995). Further, the court can impose a departure sentence, upon revocation of probation, beyond the one-cell increase permitted by sentencing guidelines for violation of probation, based on a reason that would have supported departure had the judge initially sentenced the defendant rather than placing *464 him or her on probation. See Williams v. State, 581 So.2d 144 (Fla. 1991); Routenberg v. State, 677 So.2d 1325 (Fla. 2d DCA 1996). These and other sentencing scenarios demonstrate that a probation or community control placement is not a "fixed" or final sentence as contemplated by Mitchell.[4] So long as the trial court retains jurisdiction and control over a defendant's ultimate sentence, the defendant retains a legitimate protectable Fifth Amendment interest in not testifying as to incriminatory matters that could yet have an impact on his sentence. Mitchell makes its clear that a defendant is entitled to protection from a potential increase in sentence, just as he or she is entitled to protection from being compelled to furnish evidence that could lead to a criminal conviction. The Court noted that, as a practical matter, a defendant is generally more concerned about the sentence imposed as a result of a conviction than with the conviction itself. See Mitchell, 526 U.S. at 327, 119 S.Ct. 1307.
In this case, Cuevas' concern about self-incrimination was real and substantial. Cuevas could have reasonably believed that responding to questions about the Giotis crimes presented a danger since the possibility of a greater sentence following revocation of his community control existed.[5] If the trial court had compelled Cuevas to testify in appellant's trial, his testimony might have produced evidence of his greater participation in the charged crimes, a more extensive criminal history, or other unfavorable sentencing factors undisclosed at the time of his plea and original sentencing.[6] This potential for an enhanced sentence served as sufficient justification for invoking the privilege.

Testimony of Demedicus
At the time of appellant's trial, Demedicus had timely filed a 3.800 motion to modify his sentence. We conclude that the trial court properly denied appellant's motion to hold Demedicus in contempt. Because Demedicus had a pending motion to reduce his sentence, his exposure to incrimination was readily apparent under Mitchell. Moreover, a witness who has sought post-conviction relief after having pled to a crime can invoke his Fifth Amendment privilege when called to testify as a defense witness by a co-defendant. See Ottomano v. United States, 468 F.2d 269 (1st Cir.1972)(witness/co-defendant had a pending motion to vacate sentence; thus, further incrimination was not "so remote"); People v. Villa, 671 P.2d 971, 973 (Colo.Ct.App.1983)("[W]hen a defendant is appealing his conviction, or seeking other post-conviction relief, the privilege [against self-incrimination] continues in order to protect him from the subsequent use of self-incriminating statements in the event relief is granted."); Ellison v. State, 310 Md. 244, 528 A.2d 1271, 1276 (1987)("[A] witness who has been found guilty and sentenced on criminal charges is entitled to claim the privilege against self-incrimination with regard to matters underlying those charges while the time for appeal or sentence review is pending."); State v. Click, 768 So.2d 417 (Ala.Crim.App.1999)(privilege extended to post-conviction hearing).
*465 For the reasons stated above, we hold that the trial court did not err in refusing to compel the co-defendants to testify at appellant's trial. Accordingly, we affirm appellant's judgments of conviction.
AFFIRMED.
WARNER, C.J. and KLEIN, J., concur.
NOTES
[1] See Anthony J. Phelps, Applicability of the Fifth Amendment Privilege Against Self-Incrimination at Sentencing: Mitchell v. United States Settles the Conflict, 38 Brandeis L.J. 107 (1999).
[2] Villery was superseded in part by the "Correctional Reform Act of 1983," Chapter 83-191, Laws of Florida, providing for split sentencing alternatives. However, Villery's holding regarding the statutory and rule requirements for withholding imposition of sentence when a defendant is placed on probation remains intact.
[3] We recognize that probation is considered a sentence in those instances when drawing a distinction between the two concepts will result in a more severe punishment. See Lippman v. State, 633 So.2d 1061 (Fla.1994)(holding that probation is a sentence for purposes of double jeopardy protection against multiple punishments such as the enhancement or extension of probation conditions); Van Tassel v. Coffman, 486 So.2d 528 (Fla.1985)(rejecting distinction between probation and a sentence when the probation order included incarceration as a condition and holding that probationer is eligible for gain time consideration); Griner v. State, 523 So.2d 789 (Fla. 5th DCA 1988)(construing probation as a sentence for purpose of allowing credit for prior jail time to defendant confined as a condition of probation). Similarly, probation has been construed as a sentence for purposes of appellate or post-conviction review. See Larson v. State, 572 So.2d 1368, 1370 (Fla.1991)(construing probation as a sentence in applying the contemporaneous objection rule to appeals of sentences); State v. Bolyea, 520 So.2d 562 (Fla.1988)(court ordered probation constitutes "custody under sentence" for purpose of seeking post-conviction relief under Florida Rule of Criminal Procedure 3.850).
[4] We do not address whether Mitchell would apply to probation imposed as part of a "true split sentence," where a new period of incarceration imposed following a probation violation could not exceed the remainder of the suspended portion of the original sentence of imprisonment. See Poore v. State, 531 So.2d 161 (Fla.1988); Burroughs v. State, 688 So.2d 416 (Fla. 2d DCA 1997).
[5] Statistics compiled by the Department of Corrections, tracking offenders for a year following their admission to probation or community control during the calendar year 1998, show a revocation rate of 34.3% for offenders placed on community control and 20.2 % for offenders placed on probation. These numbers suggest that re-sentencing following revocation is more than a remote possibility or "imaginary hazard of incrimination."
[6] We note, however, that Cuevas could not receive a departure sentence based on conduct that could have, but did not, result in a criminal charge and conviction. See Barr v. State, 674 So.2d 628 (Fla.1996).