# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D19-1875

_____

KATHERINE MAGBANUA,

Petitioner,

v.

STATE OF FLORIDA,

Respondent.

_____

Petition for Writ of Certiorari—Original Jurisdiction.

May 31, 2019

ROWE, J.

Katherine Magbanua is being tried for the murder of Daniel Markel. Magbanua seeks a writ of certiorari to quash an order prohibiting her from deposing Wendi J. Adelson, Markel's ex-wife and a material witness. Magbanua contends that the order departs from the essential requirements of the law because Adelson did not provide good cause to prohibit her deposition. She asserts that Adelson's blanket invocation of her Fifth Amendment privilege and claim that requiring her to appear for a deposition would embarrass, harass, or inconvenience her did not support issuance of a protective order. Magbanua argues that her inability to depose Adelson significantly impairs her ability to prepare a proper defense. Because Magbanua has not demonstrated material injury that cannot be corrected on direct appeal, we are constrained to dismiss the petition for lack of jurisdiction.

*Background*

In 2013, Markel and Adelson were engaged in a contentious legal battle over the custody of their two minor children. Adelson wanted to relocate with the children to South Florida, where her family lived. But she moved the children from their home in Tallahassee without court authorization. Markel obtained a court order requiring that the children return to Tallahassee and preventing their relocation. This outcome upset Adelson and her family.

A year later, on July 18, 2014, Markel was sitting in his garage in his parked car when he was shot in the head. Later that same day, Adelson was interviewed for over eight hours by police. Adelson indicated during the recorded interview that someone could have committed the murder thinking they were helping her. She also divulged that her brother, Charlie Adelson, joked about hiring a hit man to kill Markel.

Over the next two years, investigators developed information that Magbanua, Charlie Adelson's former girlfriend, conspired with others to procure the murder of Markel. Magbanua is alleged to have enlisted Sigfredo Garcia (the father of Magbanua's children), and Luis Rivera (Garcia's friend) to travel from Miami to Tallahassee to kill Markel. During the investigation, police obtained rental car receipts, GPS records showing the movements of the rental car, video surveillance, and cell phone records appearing to place Rivera and Garcia at the crime scene at the time of the murder.

Investigators also intercepted communications before and after the murder between Magbanua and Charlie Adelson and between Charlie Adelson and Adelson's mother (Donna Adelson). Investigators learned that after the murder, Magbanua received $13,000 in payments from entities connected to the Adelsons. Magbanua also received over $56,000 in cash payments from unknown sources that investigators believe were made in connection with Magbanua's role in procuring the murder. Magbanua, Rivera, and Garcia were charged in Markel's murder. Rivera pleaded guilty to second-degree murder and agreed to

2

cooperate with the State. Magbanua and Garcia are awaiting trial. No member of the Adelson family has been charged.

Wendi Adelson, however, has been identified as a material witness for the State in Magbanua's trial. She is listed as a Category A witness[1] and the State identified numerous items connected with Adelson, including an iPad, photos of her vehicle, cell phone records, credit card records, banking records, her recorded police interview, and her signed consent to search form. Six weeks before trial, Magbanua served Adelson with a subpoena to appear for a discovery deposition.

Adelson moved for a protective order four weeks before the scheduled trial date, stating that she intended to assert her Fifth Amendment privilege in response "to any substantive questions" asked during the deposition. Adelson admitted that she would testify at trial if subpoenaed by the State because she would be granted immunity for her testimony. She argued that good cause existed for issuing the protective order because requiring her to appear at a deposition would unnecessarily "inconvenience, embarrass, and harass" her.

Magbanua opposed the motion for protective order and moved to compel Adelson's appearance at the deposition or, in the alternative, to exclude Adelson's testimony at trial. Magbanua argued that Adelson did not show good cause to prevent the deposition. As a material witness for the State, Adelson could not assert a blanket Fifth Amendment privilege and avoid being deposed. Instead, Magbanua argued that Adelson should be compelled to appear and could then invoke her privilege on a question-by-question basis.

---

[1] Category A witnesses include eyewitnesses, alibi witnesses, witnesses who were present when a statement was made by a defendant or codefendant, and informant witnesses who offer testimony concerning statements of the defendant about issues for which the defendant is being tried. Fla. R. Crim. P. 3.220(b)(1)(A)(i) (identifying eight types of Category A witnesses).

3

The trial court granted the protective order, ruling only that requiring Adelson to assert her privilege as to individual questions would "serve no useful purpose." The order did not limit the scope of the deposition, but rather prohibited the deposition altogether. Adelson's claims of inconvenience, embarrassment, or harassment were not addressed. While the court denied Magbanua's motion to compel and motion to exclude Adelson's trial testimony, it stated the issue could be reconsidered at trial. Magbanua seeks certiorari review of the orders.

*Analysis*

Certiorari is an extraordinary remedy that "should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders." *Jaye v. Royal Saxon, Inc.*, 720 So. 2d 214, 214-15 (Fla. 1998) (quoting *Martin-Johnson, Inc. v. Savage*, 509 So. 2d 1097, 1098 (Fla. 1987)). Appellate courts are limited in their ability to review non-final orders by certiorari because "piecemeal review of nonfinal trial court orders" impedes "the orderly administration of justice." *Id.* at 215. To obtain certiorari relief, Magbanua was required to show that the trial court's order departs from the essential requirements of the law and that she has suffered a material injury that cannot be corrected on direct appeal. *Eutsay v. State*, 103 So. 3d 181, 182 (Fla. 1st DCA 2012).

Magbanua argues that her inability to seek pretrial discovery from Adelson significantly impairs her ability to prepare for trial and the error in granting the protective order could not be corrected on appeal. The purpose of the pretrial discovery rules is to avoid trial by ambush. *Scipio v. State*, 928 So. 2d 1138, 1144 (Fla. 2006) ("Florida's criminal discovery rules are designed to prevent surprise by either the prosecution or the defense. Their purpose is to facilitate a truthful fact-finding process." (quoting *Kilpatrick v. State*, 376 So. 2d 386, 388 (Fla. 1979))). Almost certainly, the protective order barring the deposition of Adelson deprives Magbanua of her right to question a material witness who has indicated that she will testify on behalf of the prosecution. Any questions that Magbanua may be able to pose to Adelson at trial would be strictly limited to the scope of the direct examination by the State. *Patrick v. State*, 104 So. 3d 1046, 1047 (Fla. 2012)

4

(holding that cross-examination of an adverse witness is limited to matters related to credibility or germane to direct examination). And as the State indicated at oral argument, it intends to narrowly tailor its questioning of Adelson to the identification of evidence and the establishment of the motive for the murder, including the timeline of the divorce and custody proceedings. Thus, Magbanua would be given little latitude in her cross-examination of Adelson because her questions would be limited to the narrow categories of information the State elicits at trial.

If Magbanua was permitted to take Adelson's deposition, she would not be restricted in the questions that could be posed. And even though Adelson could invoke her Fifth Amendment privilege in response to any questions, the very invocation of the privilege by Adelson in response to specific questions may inform Magbanua's trial preparation. Depending on how Adelson testifies at trial, the blanket prohibition against Magbanua's obtaining pretrial discovery may very well result in the material injury that Florida Rule of Criminal Procedure 3.220 was designed to prevent. *State v. Kuntsman*, 643 So. 2d 1172, 1174 (Fla. 3d DCA 1994). But material injury is not enough to support the granting of certiorari relief. Instead, Magbanua was required to demonstrate that any injury she may suffer could not be corrected on appeal.

Magbanua asserts that her inability to depose Adelson results in a material injury that cannot be corrected on appeal because a reviewing court could not determine how Adelson would have answered questions posed to her during the deposition. Nor could the impact of her answers on Magbanua's trial preparation be measured. In support of her argument, Magbanua cites decisions in civil cases where certiorari relief was granted after a party was prevented from obtaining pretrial discovery. The holdings in those cases find irreparable harm when a party is prohibited from taking the deposition of a material witness because there is no practical way to determine after judgment what the testimony of the witness would have been or how it would have affected the result of the trial. *See Solonina v. Artglass Int'l, LLC*, 256 So. 3d 971 (Fla. 3d DCA 2018); *Bush v. Schiavo*, 866 So. 2d 136 (Fla. 2d DCA 2004).

5

But Magbanua's reliance on those decisions is misplaced. This Court, on multiple occasions, has denied certiorari relief where a criminal defendant sought review of an order barring pretrial discovery, holding that any material injury could be remedied on direct appeal. *See Eutsay*, 103 So. 3d at 183 (holding that the State's failure to timely disclose physical evidence was not irreparable harm); *McGahee v. State*, 293 So. 2d 98 (Fla. 1st DCA 1974) (holding that the State's apparent disregard of the discovery rules was not irreparable harm); *see also Segura v. State*, 44 Fla. L. Weekly D1210a (Fla. 1st DCA May 6, 2019) (holding that exclusion of a third-party confession to several murders did not constitute irreparable harm). Although an appeal which results in a second trial may cause substantial delay and expense, and be understandably frustrating for the accused, the families of the victims, and witnesses, this Court has held "that the burden of enduring a trial that may ultimately have to be repeated is not the type of harm certiorari exists to prevent." *Eutsay*, 103 So. 3d at 182. And as counsel for Magbanua conceded at oral argument, no Florida court has granted certiorari relief to a criminal defendant for a pretrial discovery violation by the State or following a pretrial order denying the defendant the right to seek pretrial discovery under the Rules of Criminal Procedure. Because Magbanua has not demonstrated that any material injury she may suffer could not be corrected on direct appeal, we are constrained to dismiss her certiorari petition for lack of jurisdiction. *Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc.*, 104 So. 3d 344, 351 (Fla. 2012).

*Conclusion*

Although Magbanua persuasively argues that the protective order preventing any pretrial questioning of Adelson significantly impairs her ability to prepare a defense, any material injury to Magbanua may be corrected on direct appeal.[2] *See Callins v. State*, 747 So. 2d 453, 453 (Fla. 4th DCA 1999) (observing that a

---

[2] Of course, nothing prevents the trial court from reconsidering its order. Fla. R. Crim. P. 3.192 ("Nothing in this rule precludes the trial court from exercising its inherent authority to reconsider a ruling while the court has jurisdiction of the case.").

defendant always has a right of appeal from a conviction in which he or she can attack any interlocutory order). Because we lack jurisdiction, the petition for writ of certiorari is DISMISSED.

MAKAR, J., concurs with opinion; KELSEY, J., dissents with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

MAKAR, J., concurring with opinion.

I agree with Judge Kelsey's view that a departure from the essential requirements of law has been established but concur with Judge Rowe's view that the level of irreparable harm has not. I add three points.

First, just as a blanket judicial order compelling a witness to answer all deposition questions violates the witness's constitutional rights against self-incrimination, *Magid v. Winter*, 654 So. 2d 1037, 1038-39 (Fla. 4th DCA 1995); *J.R. Brooks & Son, Inc. v. Donovan*, 592 So. 2d 795, 796 (Fla. 3d DCA 1992), so too can a judicial order denying a criminal defendant the opportunity to ask any questions in deposition of a material witness who pre-emptively says she'll invoke her right against self-incrimination. The former is solely a Fifth Amendment problem; the latter is both a Fifth and Sixth Amendment one that requires a careful judicial balancing of constitutional principles.

For example, when a defendant seeks to compel a co-defendant's trial testimony, the defendant's rights to confrontation and compulsory process run head-long into the co-defendant's right against self-incrimination. In *Landeverde v. State*, 769 So. 2d 457, 465 (Fla. 4th DCA 2000), the Fourth District held that the "trial court did not err in refusing to compel the co-defendants to testify at [defendant's] trial" because Fifth Amendment principles prevailed over Sixth Amendment principles in that case. The court

7

in *Landeverde* quoted approvingly from a Third District decision, which stated that "when the Fifth Amendment guarantee collides with the Sixth Amendment *in circumstances such as these*, the Sixth Amendment right must yield because to require one to incriminate himself in order to afford help to another would be both unwise and unrealistic." *Walden v. State*, 284 So. 2d 440, 441 (Fla. 3d DCA 1973) (emphasis added).

Here, a similar constitutional collision is in play, though the context is a pretrial deposition to which criminal defendants are entitled under Florida law. The norm for such depositions is for trial judges to determine the rightfulness of a witness's "apprehensions of incrimination on a question-by-question basis" rather than via blanket orders compelling or disallowing answers to any questions. *See, e.g.*, *Magid*, 654 So. 2d at 1039. Absent unusual circumstances (not present here), this path is the one to be followed. After all, a trial judge will eventually have to confront the legitimacy of a claimed privilege against self-incrimination for trial testimony as it is an issue of law and not one dependent upon the assertions of parties or third parties. *See, e.g.*, *Belniak v. McWilliams*, 44 So. 3d 1282, 1284 (Fla. 2d DCA 2010) ("But it is not the witness who determines whether the answers fall within the privilege. Rather, 'the determination of what answers may incriminate or tend to incriminate cannot be left solely up to the witness but is a matter which requires the exercise of the sound discretion of the trial court under all the circumstances of the case.'") (citation omitted). The standard is that a "trial court may properly require a witness to answer questions only if it is perfectly clear that the witness is mistaken in his apprehensions and the answers cannot possibly have a tendency to incriminate." *Magid*, 654 So. 2d at 1039. Absent judicial parsing of a state witness's claimed self-incrimination privilege, a criminal defendant's right to depose and confront adverse witnesses is lost.

Second, the question of irreparable injury is a close one in this case, as Judge Kelsey's opinion makes evident. Magbanua says she has no idea what Adelson may say at trial, but the State has stipulated that it will only use Adelson's trial testimony for very limited purposes, such as the nature of her relationship with her ex-husband. The scope and nature of Adelson's trial testimony may contextually form a basis for post-trial relief—or not—depending

8

on how the matter is handled. Presumably the State and Adelson will have agreed upon the questions she will answer in advance of her trial testimony, Magbanua will be apprised of them, and the trial court will hear and resolve objections and issues raised, minimizing or eliminating potential prejudice to Magbanua. Plus, the trial judge has denied Magbanua's motion to compel or exclude Adelson's testimony "*without prejudice* to reassert [the motion] at [the] time the witnesses [sic] testimony is presented at trial," which means he envisions another opportunity to ameliorate Magbanua's Sixth Amendment concerns. (Emphasis added). Magbanua essentially seeks information from Adelson beyond that which the State has confirmed it will use at trial. It is not at all clear that Magbanua has a right to compel disclosure of such information; if Adelson were a co-defendant, she would not. *Landeverde*, 769 So. 2d at 465. At best, she has a limited but important right to ask questions to which Adelson may respond by invoking her constitutional privilege, subject to the trial judge's review and approval/disapproval of the privilege.

Finally, the writ of certiorari is an infrequent species of appellate proceedings for criminal defendants as applied to discovery matters. *See, e.g.*, *Kidder v. State*, 117 So. 3d 1166, 1169 (Fla. 2d DCA 2013) (denying relief where defendant sought non-disclosure of blood alcohol test on Fifth Amendment grounds). The reason, in large measure, is the principle that the writ of certiorari "is not a substitute for an appeal." *State v. Smith*, 951 So. 2d 954, 956-57 (Fla. 1st DCA 2007) (noting that "general principles governing the use of certiorari apply in criminal cases as well as civil cases"). Our judicial system has set the bar higher on criminal discovery matters lest "every pretrial order in every criminal case would be subject to review by certiorari." *Id.* at 958. For this reason, the panel is constrained to according relief only where the irreparable nature of the harm is established.

KELSEY, J., dissenting.

In this context, the law clearly requires that the Fifth Amendment privilege be asserted as to specific questions, rather than being asserted as a blanket refusal to testify as was the case here. We should grant the petition and quash the protective order,

9

because these facts establish both a departure from the essential requirements of law and irreparable harm.

Alternatively, we should dismiss the petition as premature. *See Charles v. State*, 193 So. 3d 31, 32 (Fla. 3d DCA 2016) (dismissing certiorari petition as premature where challenged reports of non-testifying experts had not yet been completed or reviewed *in camera*); *Cape Canaveral Hosp., Inc. v. Leal*, 917 So. 2d 336, 339-40 (Fla. 5th DCA 2005) (denying certiorari as premature where order simply required documents be submitted to court for *in camera* review); *Travelers Indem. Co. v. Fields*, 262 So. 2d 222, 223-24 (Fla. 1st DCA 1972) (denying certiorari as premature where trial court had not yet examined disputed discovery documents *in camera* and ruled on whether they should be produced). If we granted the petition or dismissed it as premature, the trial court could then follow precedent requiring Adelson to appear at deposition and assert the privilege on a question-by-question basis, with the court determining which unanswered questions she must answer. Doing so would eliminate this issue as a potential new-trial argument, potentially saving years of time and untold dollars in public and private resources. Looking at the issue from the other end of the process, the deprivation of pretrial discovery has resulted in the granting of new trials. *See, e.g.*, *Valle v. State*, 394 So. 2d 1004, 1008 (Fla. 1981) (reversing for new trial because under Florida Rule of Criminal Procedure 3.220, requiring State to disclose all witnesses, "It necessarily follows that the trial court must allow defense counsel the time to interview these persons to properly prepare for trial."). As the majority notes, the trial court has the continuing authority to do so regardless of the disposition here. Without any such disposition on the merits, however, I must respectfully dissent.

*Departure from the Essential Requirements of Law*

On the facts presented here, Adelson's blanket invocation of the Fifth Amendment right against self-incrimination was improper, and the trial court departed from the essential requirements of the law in allowing it. A witness must invoke the privilege question by question, so the trial court can determine as to each question whether the answer would endanger the witness's rights. *See United States v. Thornton*, 733 F.2d 121, 125 (D.C. Cir.

1984); *Commitment of Smith v. State*, 827 So. 2d 1026, 1029 (Fla. 2d DCA 2002) (holding that a deponent must make a specific objection to a particular question instead of asserting a blanket privilege). An exception to this requirement exists if there is a reasonable basis to believe that answering *any* relevant questions may endanger the witness. *Thornton*, 733 F.2d at 126.

Here, however, the record does not demonstrate any such danger to Adelson, nor that she alleged any such danger. The trial court did not hold a hearing on the motion for a protective order, and Adelson presented no argument to support her bald assertion that any substantive question asked at deposition would lead to incriminating evidence requiring Adelson to invoke her Fifth Amendment privilege. Under these facts, Adelson did not demonstrate good cause to avoid the deposition. Instead, to properly invoke her Fifth Amendment privilege against self-incrimination, Adelson was required to appear at the deposition and assert the privilege on a question-by-question basis. The trial court's failure to require her to do so was a departure from the essential requirements of law.

*Irreparable Harm*

I agree with the majority that orders denying discovery rarely constitute irreparable harm. But the analysis is different when the discovery at issue is the deposition of a material witness, the denial of which constitutes irreparable harm. *Akhnoukh v. Benvenuto*, 219 So. 3d 96, 98-99 (Fla. 2d DCA 2017) (holding denial of right to depose a material witness constitutes irreparable harm); *Nucci v. Simmons,* 20 So. 3d 388, 390 (Fla. 2d DCA 2009) (recognizing irreparable harm occurs upon denial of right to take testimony of material witness, because "there would be no practical way to determine after judgment what the testimony would be or how it would affect the result" (quoting *Medero v. Fla. Power & Light Co.*, 658 So. 2d 566, 567 (Fla. 3d DCA 1995))). Irreparable harm exists here because the trial court precluded in its entirety the deposition of a uniquely central, material witness. *See Nucci*, 20 So. 3d at 390 (defining material witness as one who possesses information going to some fact affecting the merits of the cause and about which no other witness might testify).

11

As the majority correctly notes, and as both parties have indicated, there do not appear to be any criminal cases applying the rule that denial of the right to depose a material witness constitutes irreparable harm for purposes of certiorari jurisdiction. But the majority cites only cases involving exclusion of a piece of evidence, none depriving a party entirely of the ability to depose a material witness, none depriving a criminal defendant of constitutional rights secured by the right of discovery under Florida Rule of Criminal Procedure 3.220. In this context, I believe the departure from the essential requirements of law that clearly has occurred also serves to establish irreparable harm. No one except perhaps the witness herself knows exactly the content and parameters of the testimony she is willing to give, and she can assert her Fifth-Amendment privilege on a question-by-question basis, thus protecting both her constitutional rights and Magbanua's rights. But, if the deposition does not occur before trial, and Magbanua is convicted, it becomes impossible to determine what might have been—placing Magbanua beyond relief. We cannot give her the right of pre-trial preparation after trial. We have, and should exercise, certiorari jurisdiction. *See Nucci,* 20 So. 3d at 390. I would therefore grant the petition.

––––––––––––––––––––––––––––

Kristen A. Kawass of Law Offices of Kawass, P.A., Miami, for Petitioner.

Ashley Moody, Attorney General; Trisha Meggs Pate, Tallahassee Bureau Chief, Criminal Appeals; and Sharon S. Traxler, Assistant Attorney General, Tallahassee, for Respondent State of Florida.

John F. Lauro and Michael G. Califano of Lauro Law Firm, Tampa, for Non-Party Wendi J. Adelson.