423 So.2d 934 (1982)
Theodore J. DELISI, Jr., and Theodore J. Delisi, Sr., Petitioners,
v.
Jim SMITH, Attorney General of the State of Florida, Respondent.
No. 82-1161.
District Court of Appeal of Florida, Second District.
November 19, 1982.
Rehearings Denied December 28, 1982.
*935 Steven Kellough and A.J. Barranco, Jr., of Barranco & Kellough, P.A., Miami, and Law Offices of Michael H. Bloom, Coconut Grove, for petitioners.
Jim Smith, Atty. Gen., and David K. Miller, Asst. Atty. Gen., Tallahassee, for respondent.
PER CURIAM.
In this petition for writ of certiorari we must decide whether or to what extent defendants in a RICO civil forfeiture action can refuse to answer interrogatories, answer questions propounded at deposition, and produce certain business records by invoking their privilege against self-incrimination.[1]
The Attorney General of the State of Florida filed an action against Theodore J. Delisi, Sr., and Theodore J. Delisi, Jr., and others, for forfeiture of properties and money damages pursuant to section 943.464, Florida Statutes (1979). In response to a notice of taking deposition duces tecum, Delisi, Sr., objected but agreed to appear for the deposition in order to create an adequate record for review by the lower court. At the deposition Delisi, Sr., failed to produce the documents and, after stating his name and address, asserted his privilege against self-incrimination as secured by the fifth and fourteenth amendments to the United States Constitution and the Florida Declaration of Rights and declined to answer any of the questions directed to him. Written interrogatories were propounded to Delisi, Jr., and pursuant to Florida Rule of Civil Procedure 1.340(a), his attorney entered objections on the same grounds.
The attorney general moved to compel discovery. The court granted the motions, and the Delisis petitioned for certiorari.
There are two aspects of the privilege against self-incrimination which we must consider. The first involves the absolute prohibition of compelling a defendant in a criminal case to testify against himself. The second pertains to the right of a witness in a proceeding other than a criminal prosecution in which he is a defendant to refuse to respond to interrogation on the grounds that his answers might tend to incriminate him. See McCormick's Handbook of the Law of Evidence § 116(c) (E. Cleary 2d ed. 1972). If this RICO action is construed as a criminal proceeding, the state is not entitled to the discovery which it seeks.
In Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Supreme *936 Court considered a federal statute authorizing fine, imprisonment and forfeiture of imported merchandise for violation of the customs laws. Defendants in a forfeiture proceeding were ordered to produce certain papers to be used against them. The court enunciated the principle that:
"[P]roceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal... . [W]e think that they are within the reason of criminal proceedings for all the purposes ... of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself.
116 U.S. at 634, 6 S.Ct. at 534.
Petitioners herein argue that Boyd controls and that, therefore, the lower court's order compelling discovery should be quashed. An examination of case law subsequent to Boyd persuades us to reach a contrary conclusion.
Whether a given sanction is considered civil or criminal is a question of legislative intent. One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). Since Boyd, the Supreme Court has on several occasions sustained the imposition of both a criminal penalty and a civil sanction for forfeiture for the same act or omission, holding that forfeiture proceedings can be civil and remedial if the legislative intent so indicates. See, e.g., One Lot Emerald Cut Stones (forfeiture under customs law); United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (forfeiture under fraudulent claims act). In Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), the Supreme Court noted that forfeiture as a remedial sanction has long been recognized as enforceable by civil proceedings, and constitutional guarantees governing criminal prosecutions do not apply. In noting that a defendant in a civil forfeiture action has no constitutional right to refuse to testify, the court did not construe Boyd as holding to the contrary "where the sanction involved is remedial, not punitive." Helvering v. Mitchell, 303 U.S. at 404, n. 12, 58 S.Ct. at 635, n. 12 (1938).
More recently, the United States Supreme Court addressed this issue in depth in United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). In Ward, the lessee of a drilling facility in Oklahoma notified an office of the Environmental Protection Agency that oil was escaping from its retention pit. The notification was in accordance with the Federal Water Pollution Control Act which imposed a duty upon anyone in charge of an appropriate facility to report discharges of oil into navigable waters. The act included a form of "use immunity" which specified that any such notification could not be used against the person making the required report in any criminal case except for prosecution for perjury or for giving a false statement. Thereafter, pursuant to another section of the same act, the Coast Guard assessed a civil penalty of $500 against the reporting lessee. He appealed on grounds that the reporting requirements of the act violated his privilege against compulsory self-incrimination. The case finally reached the Supreme Court after the court of appeals had determined that the act was sufficiently punitive to intrude upon the fifth amendment protections against self-incrimination. The Supreme Court reversed with two concurring and only one dissenting opinions.
The Court first analyzed the act to see whether Congress intended to provide a civil or a criminal penalty. Noting that Congress had labelled the sanction a "civil penalty," the Court concluded that it had no doubt that Congress intended to allow the imposition of the penalties without regard to the procedural protections and restrictions available in criminal prosecutions. The Court went on to hold that the statutory scheme was not so punitive either in purpose or effect as to negate that intention despite the fact that the behavior to which the penalty applied was a crime in and of itself. The Court found it significant that civil penalties were enacted in a *937 separate act passed many years after the criminal statute.
Finally, the Court addressed the lessee's argument predicated upon Boyd that while the penalty provision of the act may not provide him with the other procedural guarantees normally associated with criminal prosecutions, it was nevertheless "quasi-criminal" and therefore sufficient to implicate the fifth amendment's protection against compulsory self-incrimination. In addressing Boyd, the Court first observed:
This Court has declined, however, to give full scope to the reasoning and dicta in Boyd, noting on at least one occasion that "[s]everal of Boyd's express or implicit declarations have not stood the test of time."
448 U.S. at 253, 100 S.Ct. at 2643. The Court went on to distinguish Boyd in several particulars, including the observation that Boyd dealt with a forfeiture of property that was a penalty having absolutely no correlation to any damages sustained by society or the costs of enforcing the law. In the final analysis, however, the Court fell back upon the intent of Congress when it said:
More importantly, however, we believe that in the light of what we have found to be overwhelming evidence that Congress intended to create a penalty civil in all respects and quite weak evidence of any countervailing punitive purpose or effect it would be quite anomalous to hold that § 311(b)(6) created a criminal penalty for the purposes of the Self-Incrimination Clause but a civil penalty for all other purposes. We do not read Boyd as requiring a contrary conclusion.
448 U.S. at 254, 100 S.Ct. at 2644.
The remedial character of the Florida RICO forfeiture action is made clear by an examination of the legislative findings of fact made in conjunction with passage of the RICO Act.
WHEREAS, the Legislature finds that organized crime is a highly sophisticated, diversified, and widespread problem which annually drains billions of dollars from the national economy by various patterns of unlawful conduct, including the illegal use of force, fraud, and corruption, and
WHEREAS, organized crime exists on a large scale within the State of Florida, and it engages in the same patterns of unlawful conduct which characterize its activities in other states, and
WHEREAS, seventeen of the twenty-one publicly identified organized crime "families" are reported to operate within Florida, and because no single "family" is considered by the other "families" to have exclusive dominion in the state, Florida is considered by organized criminal operatives as an "open state" and other organized criminal operatives are now migrating to Florida from other states, and
WHEREAS, organized crime is infiltrating and corrupting legitimate businesses operating within this state and this infiltration and corruption uses vast amounts of money, power, and all the techniques of violence, intimidation, and other forms of unlawful conduct to accomplish its goals, and
WHEREAS, in furtherance of such infiltration and corruption, organized criminal operatives utilize and apply to their unlawful purposes laws of the State of Florida conferring and relating to the privilege of engaging in various types of business enterprises, and
WHEREAS, infiltration and corruption of legitimate business provide an outlet for illegally obtained capital, harm innocent investors, entrepreneurs, merchants, and consumers, interfere with free competition, and thereby constitute a substantial danger to the economic and general welfare of the State of Florida, and
WHEREAS, in order to successfully resist and eliminate such infiltration, it is necessary to provide new criminal and civil remedies and procedures, NOW, THEREFORE, ...
Ch. 77-334, Laws of Fla.
We find that the instant forfeiture action furthers several remedial purposes. First, it impairs the ability of those engaged in *938 criminal activity to camouflage their illegal operations. Second, it attempts to eliminate from the legitimate business community competition by illegal capital. Third, it attempts to reduce the profits of those engaged in illegal enterprises and thereby discourage further migration to Florida of organized crime "families."
There are further analogies to Ward in the RICO statute. Section 943.464 is entitled "Civil Remedies." The RICO statute was enacted separately and in most instances long after the various statutes proscribing the criminal conduct which constitutes racketeering activity. Moreover, in a general way, the civil remedies under the RICO act, rather than imposing a totally unrelated forfeiture, are designed to recover for society the ill-gotten gains of those engaged in criminal activity.
Accordingly, we hold that the petitioners do not have the right to refuse to testify or to provide discovery in the civil proceedings conducted pursuant to section 943.464, Florida Statutes (1979).
This, however, does not end our inquiry. We must also consider the second aspect of the privilege, because the petitioners also argue that to answer the questions and furnish the requested information would incriminate them in other proceedings. Of course, the determination of what answers may incriminate or tend to incriminate cannot be left solely up to the witness but is a matter which requires the exercise of the sound discretion of the trial court under all the circumstances of the case. State ex rel. Mitchell v. Kelly, 71 So.2d 887 (Fla. 1954).
We see no departure from the essential requirements of law in the denial of most of Delisi, Jr.'s objections to the interrogatories propounded to him. Interrogatories 1 (identify persons who participated in the answering of interrogatories), 3 (identify persons having knowledge of the defendant's financial records and those whom defendant anticipates calling as witnesses at the trial), 5 (identify other witnesses defendant anticipates calling at the trial), and 6 (identify documents, records and exhibits which defendant anticipates introducing at the trial) are well within the scope of civil discovery, and we cannot say that the trial judge abused his discretion in determining that it was not reasonably possible that they would evoke a response forming a link in the chain of evidence which might lead to criminal prosecution.
Interrogatories 7 and 8 relate to the defendant's address. The answer to this question might bring about Delisi, Jr.'s apprehension but will not incriminate him because he became a fugitive when he failed to appear in connection with his criminal prosecution.[2] Interrogatories 9 (describe defendant's employment since 1970), 11 (name all business entities with which the defendant has had affiliations since 1970), 12 (describe the nature of such business entities and identify the records custodian of each), and 13 (describe any government license or permit held by the defendant or any of such business entities) were limited by the trial court to require only responses with respect to lawful employment, lawful business affiliations and lawful licenses or permits. As so limited, we cannot say that the objections were improperly denied because the answers should not reasonably be expected to incriminate Delisi, Jr.
We believe, however, that the court should have stricken interrogatory number 2 which first asked for the identification of all exculpatory witnesses and then required Delisi, Jr., to state which exculpatory witnesses he anticipated calling at the trial. When the answers to these interrogatories are compared with the answers to those relating to other witnesses, it follows that Delisi, Jr., is being asked to name inculpatory witnesses, an answer which may tend to incriminate him. Furthermore, interrogatory number 10, as limited by the court, requires Delisi, Jr., to state various items of lawful income as reported on federal income *939 tax returns since 1970. Access to his federal income tax returns might reveal that additional income was reported, thereby leading to the conclusion that it was unlawful. We believe that, as phrased, there might be at least a possibility that the answer to this question would tend to incriminate Delisi, Jr.
Delisi, Sr., was served a subpoena duces tecum requiring him to appear for his deposition and produce various financial records. He refused to bring the records on the basis of his fifth amendment privilege against self-incrimination and declined to answer the various questions propounded to him on the same basis. At the hearing, the court ruled that since Delisi, Sr., had pled nolo contendere to and was convicted of the charges arising out of the conduct upon which this RICO action was based, he no longer had a right to decline to produce the records or to refuse to testify concerning these matters.
In his petition for certiorari, Delisi, Sr., asserts that he had the right to claim the privilege of self-incrimination because he is still subject to federal prosecution for the same conduct. In this regard, the law is clear that under the doctrine of "dual sovereignty" a defendant may constitutionally be tried for violation of state and federal laws arising from the same criminal episode. United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); State v. Booth, 418 So.2d 385 (Fla. 1st DCA 1982).
In addressing this issue, this court asked for supplementary briefs on the question of whether compelled discovery in a civil RICO action, when a fifth amendment right against self-incrimination is exercised, operated as a grant of immunity for unprosecuted crimes. We were interested in this subject because if the compelled discovery by the state in these proceedings constituted a grant of immunity, such a grant would preclude later federal prosecution, thereby obviating the objection. Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
Upon consideration, we have concluded that Florida's statutory provision for immunity does not contemplate the granting of immunity in a civil RICO proceeding.[3] The statute provides that no person shall be excused from testifying or producing any records "upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state" upon grounds of self-incrimination. In view of our previous analysis, it is evident that this civil RICO action cannot be deemed a proceeding for the violation of a criminal statute.[4] As a consequence, Delisi, Sr.'s objection predicated upon his fear of federal prosecution was well founded.[5]
*940 Because of the trial judge's ruling that Delisi, Sr.'s state court conviction precluded further objection upon grounds of self-incrimination, he never specifically addressed the actual questions propounded to Delisi, Sr., at his deposition. Some of these questions were not objectionable on the basis of a fear of federal prosecution or upon any other basis. Hence, upon remand it will be necessary for the court to address the specific questions to which objections are made.
Finally, Delisi, Sr., complains of the order requiring him to produce the financial records which were in his possession pertaining to various entities and persons. Regardless of the possibility of federal prosecutions, these objections were not well taken with respect to the corporate and partnership records because the custodian of these records cannot object to their production on grounds of self-incrimination even when the corporation or partnership is a small or closely held business and the records custodian is an officer, director or partner who might be implicated in the criminal activity by virtue of the content of the records. Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). In order to decide whether to require the production of the records of certain undesignated business entities, the court will have to inquire into their structure to see whether they fall within the rationale of Bellis. Whether Delisi, Sr., can refuse to produce his son's records which are in his possession is an issue which was never specifically addressed to either the trial court or to this court and, therefore, should be considered upon remand.
Accordingly, we partially grant the petition for writ of certiorari and quash that portion of the order which requires Delisi, Sr., to produce all of the records requested and to answer all of the questions propounded. We remand this aspect of the case for further proceedings with the thought that the parties might wish to start over so as to have the benefit of the guidelines set forth in this opinion. We also quash the requirement that Delisi, Jr., answer interrogatories 2 and 10. In all other respects, the petition for writ of certiorari is denied.
GRIMES, A.C.J., and SCHEB and CAMPBELL, JJ., concur.
NOTES
[1] We previously considered an attack on a preliminary injunction in this action. See Delisi v. Smith, 401 So.2d 925 (Fla. 2d DCA 1981).
[2] In any event, this objection may be moot since the state has advised us that pending these proceedings Delisi, Jr., has been apprehended.
[3] Witnesses; person not excused from testifying in certain prosecutions on ground testimony might incriminate him; immunity from prosecution.  No person, having been duly served with a subpoena or subpoena duces tecum, shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, or state attorney, upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding.
This statute was amended in 1982 to eliminate transactional immunity. Ch. 82-393, Laws of Fla.
[4] This is not to say that the legislature could not authorize the grant of immunity in a civil RICO proceeding, but so far it has not seen fit to do so.
[5] We note that during the course of the hearing, the judge observed that he understood that Delisi, Sr., had waived his self-incrimination privilege as part of a bargain in connection with his nolo contendere plea. Upon remand, the state may wish to develop this further because if this actually occurred, Delisi, Sr., would hardly be in a position to repudiate his waiver.