827 So.2d 1026 (2002)
In re the COMMITMENT OF Keith Norwood SMITH, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D01-5451.
District Court of Appeal of Florida, Second District.
September 11, 2002.
Rehearing Denied October 17, 2002.
*1027 Elliott C. Metcalfe, Jr., Public Defender, and Christopher E. Cosden, Assistant Public Defender, Sarasota, for Petitioner.
Robert A. Butterworth, Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Respondent.
BLUE, Chief Judge.
Keith Norwood Smith seeks relief in this court by way of certiorari or prohibition to prevent the State from taking his deposition in a sexual violent predator (SVP) commitment action under the Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators' Treatment and Care Act. We remand to the trial court for further proceedings because the unusual posture of this case and the state of the record before us do not provide a basis for our final determination of the issues presented.
Mr. Smith, a respondent in an SVP proceeding, appeared at a deposition scheduled by the State and refused to answer any questions beyond those asking his name and birth date, claiming the answers would violate his constitutional rights to be free from self-incrimination, to privacy, and to equal protection. At a hearing on the State's motion to compel, the trial court required the State to submit proposed questions and gave Mr. Smith the opportunity to submit specific written objections. The State submitted forty-nine questions, and Mr. Smith made written objections based on the constitutional rights noted above, in addition to objections based on form and relevance. Without any further hearing or inquiry, the *1028 trial court entered a blanket denial of all objections.
Some background on SVP commitment actions is necessary to understand the reason we are remanding this case to the trial court. Mr. Smith, as others who have been found guilty and sentenced for certain sex crimes, faces long-term commitment if a jury, in a civil trial, finds he meets certain criteria established by the legislature.[1] First, the respondent must have committed one of the enumerated crimes set forth in the statute.[2] In most cases, this can be established by a certified copy of the conviction. Second, the respondent must suffer from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence without commitment. As to this second prong, the respondent must have a "serious difficulty in controlling behavior," Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 870, 151 L.Ed.2d 856 (2002), which results in a likelihood of reoffending. The mere fact that a person is likely to reoffend is not a sufficient basis for commitment. The psychological component impairing the person's ability to control his actions is a constitutionally-required element, necessary to separate "the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Crane, 122 S.Ct. at 870. In most cases, this psychological component will be proven at trial through the testimony of experts.
With this background, and after examining the deposition questions proposed by the State, we are puzzled at the State's insistence on taking the deposition.[3] We *1029 fail to see how the majority of questions elicit evidence or will tend to lead to evidence relevant to the issues in this commitment action. Some, if not all, appear to be irrelevant to the issues involved in an SVP commitment action. We cannot determine these issues until the trial court has held a hearing and entered an order examining each of the contested questions.[4] The following analysis is intended to provide parameters for the trial court's work on remand.
As to the privilege against self-incrimination, we think it beyond argument that these proceedings are civil in nature, given the U.S. Supreme Court's decision in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), and we agree with the thorough analysis by the Fifth and First Districts in reaching this conclusion. See Westerheide v. State, 767 So.2d 637 (Fla. 5th DCA 2000), review granted, 786 So.2d 1192 (Fla. 2001) (table decision); Hudson v. State, 825 So.2d 460(Fla. 1st DCA, 2002). "There are two aspects of the privilege against self-incrimination.... The first involves the absolute prohibition of compelling a defendant in a criminal case to testify against himself." Delisi v. Smith, 423 So.2d 934, 935 (Fla. 2d DCA 1982). Because this is not a criminal case, the absolute prohibition does not apply. "The second pertains to the right of a witness in a proceeding other than a criminal prosecution in which he is a defendant to refuse to respond ... on the grounds that his answers might tend to incriminate him." Delisi, 423 So.2d at 935. Parties in a civil action retain the right to be free from self-incrimination. Fischer v. E.F. Hutton & Co., 463 So.2d 289 (Fla. 2d DCA 1984). Instead of asserting a blanket privilege, the deponent "is required to make a specific objection to a particular question and, at that time, assert his [F]ifth [A]mendment privilege. At that point, the trial court should determine whether the answer could lead to criminal conviction...." 463 So.2d at 291. We note that the privilege dissipates as to a particular crime once a conviction has become final and a fixed sentence has been imposed. "[W]here there can be no further incrimination, there is no basis for the assertion of the privilege." Landeverde v. State, 769 So.2d 457, 462 (Fla. 4th DCA 2000) (holding that three codefendants had legitimate Fifth Amendment claims, and thus could not be compelled to testify in Landeverde's trial, because one had an appeal pending, the second could face an increased sentence if he violated community control, and the third had a pending motion to modify his sentence) (quoting Mitchell v. United States, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999)).
Pertinent to this issue, the State argues that Mr. Smith should be compelled to answer all questions because he would receive immunity, citing In re Beverly, 342 So.2d 481 (Fla.1977), to support this claim. In Beverly, the supreme court upheld the constitutionality of the Baker Act, which allows for the involuntary civil commitment of certain mentally ill persons. As to the constitutional privilege against self-incrimination, the supreme court held that "[t]he exclusion, at any subsequent criminal prosecution, of any admissions, information or evidence divulged by the person being examined, would suffice to protect his constitutional rights." 342 So.2d at 489. What the supreme court was discussing, however, was the assertion of the privilege to "disclosures which are made by a mental patient during a psychiatric examination and which will lead only to an assessment of his mental or emotional condition." *1030 342 So.2d at 488 (emphasis added). We note here the obvious: the State's deposition is not a psychiatric examination. And it appears that there are few, if any, depositions taken in Baker Act proceedings; certainly there is no substantial body of case law regarding discovery in Baker Act proceedings.
At this point in time, a multidisciplinary team has already assessed Mr. Smith and determined that he qualifies for commitment.[5] In Florida, before a potential predator is released from incarceration, the agency with jurisdiction over the person must inform a multidisciplinary team, which shall be comprised of at least two licensed psychiatrists or psychologists or one of each. § 394.913(1), (3)(a), Fla. Stat. (2001). This team conducts an evaluation of the person for the purpose of recommending whether the person qualifies for commitment. Before making its recommendations, the team must offer the person an interview, which may be refused. § 394.913(3)(c). From the multidisciplinary team's written report and recommendation, the state attorney decides whether a commitment petition should be filed. § 394.914. If filed, the trial court determines whether there is probable cause. § 394.915(1).
Claiming the privilege may subject a party to sanctions, such as striking of pleadings or defenses, barring the testimony of the person claiming the privilege, see Roberts v. Jardine, 358 So.2d 588 (Fla. 2d DCA 1978), or the possibility of incarceration.[6]See Fla. R. Civ. P. 1.380. A blanket denial of Mr. Smith's claim of privilege against self-incrimination, as occurred in this case, does not provide an order we can review. Some of the questions appear to violate Mr. Smith's right against self-incrimination. On remand, given our conclusion that Mr. Smith must appear at deposition and cannot assert a blanket of protection, he should make a good faith assertion of the privilege where necessary. The trial court must inquire further before compelling him to answer such questions. Then, if the information would otherwise be privileged but the State wants it anyway, a clear record can be made regarding the State's grant of immunity.
Mr. Smith also claims an invasion of his right to privacy. While the Florida privilege against self-incrimination appears to be no broader than the privilege provided by the Fifth Amendment to the U.S. Constitution, State v. Tsavaris, 382 So.2d 56, 68 (Fla. 2d DCA 1980), the explicit right to privacy in the Florida Constitution is a fundamental right that is "much broader in scope than that of the Federal Constitution." Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation, 477 So.2d 544, 548 (Fla.1985). When there is a reasonable expectation of privacy,[7] in order to intrude the State *1031 must meet the heavy burden of strict scrutiny by showing a compelling state interest and use of the least intrusive means. Winfield, 477 So.2d at 547.
The potential for invasion of privacy is inherent in the litigation process.... The discovery rules ... confer broad discretion on the trial court to limit or prohibit discovery in order to `protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' Fla. R. Civ. P. 1.280(c). Under this authority, a court may act to protect the privacy of the affected person.
Rasmussen v. S. Fla. Blood Serv., Inc., 500 So.2d 533, 535 (Fla.1987); see also Post-Newsweek Stations, Fla. Inc. v. Doe, 612 So.2d 549 (Fla.1992) ("Depending on the circumstances and the subject matter, discovery may `seriously implicate privacy interests of litigants and third parties.'") (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). In Rasmussen, holding that the privacy interests of nonparties outweighed a plaintiff's interest in obtaining certain discovery, the supreme court noted that the probative value of the information sought was "dubious at best." 500 So.2d at 538.
This point returns us to our initial concern in reviewing the State's attempt to depose Mr. Smith. Given the limited issues for determination in an SVP commitment action, the trial court must determine the relevance of the information sought, and it must limit or prohibit discovery when necessary to prevent annoyance, embarrassment, oppression, undue burden or undue expense. On remand, the trial court should address the significant issues raised by the State's use of discovery, conduct in camera inspections when necessary, and make a record by transcript or written orders that provides a basis for this court to review its exercise of discretion in managing the discovery process.
Petition for certiorari granted; order vacated; remanded for further proceedings.
STRINGER and DAVIS, JJ., Concur.
NOTES
[1] Section 394.912(10), Florida Statutes (2001), defines a sexually violent predator as one who:

(a) Has been convicted of a sexually violent offense; and
(b) Suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
[2] Section 394.912(9) defines sexually violent offense as:

(a) Murder of a human being while engaged in sexual battery in violation of s. 782.04(1)(a)2.;
(b) Kidnapping of a child under the age of 13 and, in the course of that offense, committing:
1. Sexual battery; or
2. A lewd, lascivious, or indecent assault or act upon or in the presence of the child;
(c) Committing the offense of false imprisonment upon a child under the age of 13 and, in the course of that offense, committing:
1. Sexual battery; or
2. A lewd, lascivious, or indecent assault or act upon or in the presence of the child;
(d) Sexual battery in violation of s. 794.011;
(e) Lewd, lascivious, or indecent assault or act upon or in the presence of the child in violation of s. 800.04;
(f) An attempt, criminal solicitation, or conspiracy, in violation of s. 777.04, of a sexually violent offense;
(g) Any conviction for a felony offense in effect at any time before October 1, 1998, which is comparable to a sexually violent offense under paragraphs (a)-(f) or any federal conviction or conviction in another state for a felony offense that in this state would be a sexually violent offense; or
(h) Any criminal act that, either at the time of sentencing for the offense or subsequently during civil commitment proceedings under this part, has been determined beyond a reasonable doubt to have been sexually motivated.
[3] In People v. Superior Court, 94 Cal.App.4th 980, 114 Cal.Rptr.2d 760, 764 (2001), the district attorneys in California were opposed to civil discovery and depositions in SVP proceedings because it would "frustrate the proceedings by causing unnecessary delay and expense." In holding that civil discovery applied, the California Court of Appeal analyzed the lower court's authority to manage discovery in light of the narrow scope of issues to be determined in commitment proceedings and the need for expeditious adjudication.
[4] Because these are deposition questions, which may require follow-up questions, we foresee extended litigation over what appears to be an unnecessary deposition.
[5] In discussing the parameters of discovery in SVP proceedings, the California Court of Appeal noted that "in some cases expert witness testimony will have been elicited before trial" at probable cause hearings and later at annual show cause hearings. People v. Superior Court, 114 Cal.Rptr.2d at 771.
[6] This latter sanction would not appear to have much effect in SVP commitment actions where the party is facing long-term detention.
[7] See, e.g., Post-Newsweek Stations, Fla. Inc. v. Doe, 612 So.2d 549, 552 n. 3 (Fla.1993) (noting "that the details of an individual's life dealing with noncriminal intimate associations fall within a protected zone of privacy"); Fla. Bd. of Bar Exam'rs re: Applicant, 443 So.2d 71, 76 (Fla.1983) (recognizing expectation of privacy in medical and mental health records but finding right of privacy overcome by compelling interest in ensuring fitness of attorneys; noting "[t]he fact that the information obtained ... is held in confidence by the Board and this Court minimizes the intrusion on an applicant's privacy").