884 So.2d 198 (2004)
In re COMMITMENT OF Duane Edwin SUTTON, Keith Norwood Smith, John R. Beikirich, Edward Allen Singleton, Jerry Wade Rhoades, and George Samuel Demarco.
Duane Edwin Sutton, Keith Norwood Smith, John R. Beikirich, Edward Allen Singleton, Jerry Wade Rhoades, and George Samuel Demarco, Petitioners,
v.
State of Florida, Respondent.
Nos. 2D03-2780, 2D03-2973, 2D03-2984, 2D03-2988, 2D03-2993, 2D03-3327.
District Court of Appeal of Florida, Second District.
July 28, 2004.
Rehearing Denied September 21, 2004.
*201 Elliott C. Metcalfe, Jr., Public Defender, and Christopher E. Cosden, Assistant Public Defender, Sarasota, for Petitioners.
Charles J. Crist, Jr., Attorney General, and Janet McDonald, Assistant Attorney General, Tampa, for Respondent.
KELLY, Judge.
In these consolidated cases, the petitioners seek certiorari review of the trial court's orders requiring them to submit to depositions in sexually violent predator commitment proceedings. In the alternative, they seek prohibition to prevent or limit the scope of the State's depositions. Because the petitioners have failed to demonstrate that the trial court departed from the essential requirements of law resulting in irreparable harm, we deny the petitions.
In each case, the petitioners pleaded nolo contendere to sexual offenses, were adjudicated and sentenced, and were serving their sentences when the State sought to have them involuntarily committed as sexually violent predators under the Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators' Treatment and Care Act, sections 394.910-.931, Florida Statutes (2002). During the commitment proceedings, the State attempted to depose some of the petitioners. The petitioners objected claiming that the depositions violated their right to privacy and their Fifth Amendment privilege against self-incrimination.
When the court ordered the petitioners to submit to depositions, they sought certiorari review, requesting this court to prohibit the State from deposing them.[1] In Commitment of Smith v. State, 827 So.2d 1026 (Fla. 2d DCA 2002), this court held that a respondent in a sexually violent predator commitment proceeding cannot assert a blanket right of privacy or the right against self-incrimination to avoid being deposed. Instead, he must appear and make a good faith assertion of the privileges to particular questions when necessary. We remanded for a hearing on the petitioner's objections to proposed deposition questions. Id. at 1031; see In re Commitment of Sutton, 828 So.2d 1081 (Fla. 2d DCA 2002).
Thereafter, the petitioners in these consolidated cases filed with the trial court copies of the proposed deposition questions, together with written objections to each question. Again, following hearings on the contested questions, the court ordered each petitioner to submit to a deposition and to answer the State's questions, with some limitations. The trial court stayed the orders pending review in this court.
The petitioners again ask this court to quash the orders allowing their depositions to be taken or alternatively, to issue a writ of prohibition to the State Attorney of the Twelfth Judicial Circuit of Florida to prevent the State from deposing them. This court has previously held that Jimmy Ryce detainees in this type of civil commitment proceeding do "not have any absolute privilege to avoid the discovery process." Sutton, 828 So.2d at 1082. Accordingly, this aspect of the petitioners' arguments has no merit.
The petitioners also seek certiorari relief from the trial court's rulings on their objections to the questions proposed by the State. In Martin-Johnson, Inc. v. *202 Savage, 509 So.2d 1097 (Fla.1987), the court explained the limits on the use of petitions for writs of certiorari to obtain review of an order granting discovery. The court emphasized that certiorari is an "extraordinary remedy" that "should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders." Id. at 1098. The court noted that while orders granting discovery had traditionally been reviewed by certiorari, not every erroneous discovery order creates certiorari jurisdiction in an appellate court. Id. at 1100. A nonfinal order granting discovery will be reviewed by certiorari only when the order departs from the essential requirements of the law and causes irreparable injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal. Id. at 1099. As explained below, the petitioners have failed to show either.
The petitioners have objected to every question posed to them, including questions as innocuous as those requesting their date of birth, on the ground that the information sought is protected by the Fifth Amendment. In essence, the petitioners have done nothing more than raise a blanket assertion of their Fifth Amendment privilege, something we have previously held is not available to these petitioners because of the civil nature of these proceedings. See Smith, 827 So.2d at 1029. Nevertheless, the trial court did make individual determinations regarding whether certain questions sought privileged information, and the petitioners have challenged those determinations in their petitions.
A witness is generally entitled to invoke the Fifth Amendment privilege against self-incrimination whenever there is a realistic possibility that his answer to a question can be used in any way to convict him of a crime. It need not be probable that a criminal prosecution will be brought or that the witness's answer will be introduced in a later prosecution; the witness need only show a realistic possibility that his answer will be used against him. Moreover, the Fifth Amendment forbids not only the compulsion of testimony that would itself be admissible in a criminal prosecution, but also the compulsion of testimony, whether or not itself admissible, that may aid in the development of other incriminating evidence that can be used at trial. The privilege is inapplicable only "if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness."
DeLisi v. Bankers Ins. Co., 436 So.2d 1099, 1101 (Fla. 4th DCA 1983) (quoting Pillsbury Co. v. Conboy, 459 U.S. 248, 266 n. 1, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983) (Marshall, J. concurring)) (internal citations omitted). If the self-incriminating nature of the question is not clear from the face of the question, the party claiming the privilege may be required to provide sufficient information on which a trial court may find that a reasonable danger of incrimination exists. M.S.S. v. DeMaio, 503 So.2d 1384 (Fla. 5th DCA 1987). The trial court has the ultimate responsibility to determine whether the witness's refusal to answer questions is in fact justifiable under the privilege. Id. at 1386. The trial court has broad discretion to determine what answers provided in discovery may incriminate or tend to incriminate a litigant. Delisi v. Smith, 423 So.2d 934 (Fla. 2d DCA 1982).
The petitioners have failed to demonstrate that the trial court departed from the essential requirements of law in its rulings on their Fifth Amendment claims. The record reflects that the petitioners *203 presented no argument to the trial court regarding most of their Fifth Amendment objections. With respect to the objections that they did argue, the trial court properly limited the scope of inquiry where the questions on their face appeared to call for a potentially incriminating response. To the extent that the trial court did not sustain the petitioners' objections, it was with respect to questions that on their face did not appear to call for an incriminating response. The petitioners' conclusory argument that the responses to those questions "may well include" or "could easily include" incriminating information is not adequate to meet their burden to demonstrate that there is a realistic possibility that the answer to those questions could be used to convict them of a crime. See Smith, 827 So.2d at 1029.
The petitioners also objected to each question posed by the State on the grounds that the questions sought information that was "irrelevant and immaterial to this action, cumulative, and multiplicious" and that "the information requested is already known to the State, and is thus intended only to annoy, embarrass, oppress, and create undue burden and expense." Certiorari generally does not lie to review the relevance of discovery, since the disclosure of information that is merely irrelevant is not likely to cause irreparable harm. Wal-Mart Stores, Inc. v. Cumming, 736 So.2d 1248 (Fla. 4th DCA 1999). The petitioners have failed to demonstrate that any irreparable harm will come to them from disclosure of the information they contend is irrelevant. Nor have the petitioners met their burden to demonstrate that they will be harmed by the discovery they claim is burdensome. An objection claiming an undue burden in responding to discovery requests must be supported by record evidence, such as an affidavit detailing the basis for claiming that the onus of supplying the information or documents is inordinate. Topp Telecom, Inc. v. Atkins, 763 So.2d 1197 (Fla. 4th DCA 2000). The petitioners did not make such a showing; instead, they relied on unsupported and conclusory claims of undue burden and expense.
Singleton, Rhoades, Beikirich, DeMarco, and Smith objected to every question posed by the State on the grounds that the questions sought information which was protected by the right to privacy in the United States Constitution and in article I, section 23 of the Florida Constitution; Sutton objected to all but a few. At the hearings on their objections, the petitioners presented no argument to the trial court regarding many of their privacy objections, and in their petitions, they have abandoned all but a few of the objections that were argued.
The threshold question we must address is whether the petitioners have established that those questions seek information that is within the scope of the protection offered under either the United States or the Florida Constitutions. The right to privacy under federal law protects areas such as marriage, procreation, family relationships, and the rearing and education of children. Bd. of County Comm'rs v. D.B., 784 So.2d 585 (Fla. 4th DCA 2001). The petitioners have failed to demonstrate that the challenged questions touch on areas protected by the federal right to privacy.
The Florida Constitution sets forth a right to privacy in article I, section 23, which provides:
Right of privacy.Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
*204 Florida's right to privacy is broader than the federal right to privacy. Before the right to privacy attaches, there must be a legitimate expectation of privacy. City of N. Miami v. Kurtz, 653 So.2d 1025 (Fla. 1995). Determining whether an individual has a legitimate expectation of privacy must be made by considering all the circumstances, especially objective manifestations of that expectation. Id. at 1028. Thus, we must first decide whether an inmate detained under the Jimmy Ryce Act has a reasonable expectation of privacy in the areas inquired into by the State.
The petitioners objected to a question that asked them to state their familial relationship with the victim and witnesses in the cases in which they had been convicted. The petitioners have not demonstrated that they have a legitimate expectation of privacy with respect to this information. In apparent recognition of this fact, the petitioners have attempted to argue that the question could be interpreted as seeking information that "may be internal to the family." We find no merit in this contention because the trial court limited the State's inquiry to whether the petitioners are related by blood or marriage to the victims or witnesses. Given this limitation, there is no possibility that the question might seek information that is "internal to the family."
The petitioners also objected to a series of questions regarding their physical health and their "psychological and psychiatric health and treatment." With the exception of one question, each question regarding their mental health pertained to whether the petitioners may have sought, been offered, or received psychiatric or psychological treatment while incarcerated or while detained, or if they had ever been ordered by a court to seek such treatment. The petitioners have not offered any explanation regarding how these questions intrude into an area in which they have a legitimate expectation of privacy, nor have we been able to deduce one in light of the fact that section 394.921, Florida Statutes (2002), allows the disclosure of this type of information to, among others, the state attorney.
The one question that did not pertain to the petitioners' treatment or lack thereof while in custody sought information regarding any mental health treatment or diagnosis the petitioners may have received at any time. While it appears that this question may touch on matters to which the petitioners might have a legitimate expectation of privacy, given the nature of the proceedings, that expectation is clearly outweighed by the State's compelling interest in the long-term control, care, and treatment of sexually violent predators. See Jackson v. State, 833 So.2d 243 (Fla. 4th DCA 2002) (holding that the court should balance the defendant's right to privacy with the State's legitimate access to medical and psychological records of sexually violent predators). To the extent that any of the questions pertaining to their physical health may seek information that is protected as private, we conclude that the trial court did not abuse its discretion when it found that the State successfully demonstrated that its need for the information outweighed the petitioners' right to privacy, which, given the petitioners' status as Jimmy Ryce detainees, is minimal. See id. at 245; see also State v. Johnson, 814 So.2d 390 (Fla.2002) (stating that although a patient's medical records enjoy a confidential status by virtue of the state constitutional right to privacy, the right to privacy will yield to compelling governmental interests).
The petitioners also objected to a question that sought information regarding their thoughts and feelings about the offenses for which they have been convicted. *205 Although a person's thoughts may be protected as private, in the context of these proceedings, any right these petitioners may have to keep their thoughts private is likewise outweighed by the State's interest in obtaining the information sought by this question. See Shaktman v. State, 553 So.2d 148 (Fla.1989) (noting that the right of privacy demands that individuals be free from uninvited interference into their thoughts and actions unless the intrusion is warranted by a compelling state interest).
The petitioners also assert that information pertaining to their mental and physical health is protected by a variety of statutes that protect the confidentiality of medical records. On their face, the questions do not appear to implicate the statutory provisions on which the petitioners have relied. Nor have the petitioners' arguments demonstrated that those provisions are applicable to the questions the State has posed.
The petitioners claim that some of the questions seek information protected by both the work product and attorney-client privilege.
Although it is impossible to give a precise definition of "attorney work product" that can be applied to all situations, it can be generally defined as "[p]ersonal views of the attorneys as to how and when to present evidence, his evaluation of its relative importance, his knowledge of which witness will give certain testimony, personal notes and records as to witnesses, jurors, legal citations, proposed arguments, jury instructions, diagrams and charts he may refer to at trial for his convenience, but not to be used as evidence."
Bishop v. Polles, 872 So.2d 272, 274 (Fla. 2d DCA 2004) (quoting Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 112 (Fla.1970)). The attorney-client privilege protects confidential communications between a lawyer and client. Jenney v. Airdata Wiman, Inc., 846 So.2d 664 (Fla. 2d DCA 2003). The burden to establish the existence of a privilege is on the party asserting the privilege. Fla. R. Civ. P. 1.280(b)(5); Wal-Mart Stores, Inc. v. Weeks, 696 So.2d 855 (Fla. 2d DCA 1997).
On their face, the questions the petitioners find objectionable do not appear to call for information protected by the work product or attorney-client privileges, and the petitioners have not presented any argument that would lead us to conclude that they in fact seek privileged information. Thus, the petitioners have not met their burden to demonstrate that the trial court departed from the essential requirements of law in ordering them to answer the questions. See Wal-Mart, 696 So.2d at 856.
The petitions are denied.
STRINGER and COVINGTON, JJ., Concur.
NOTES
[1] In re Commitment of Singleton, 829 So.2d 402 (Fla. 2d DCA 2002); In re Commitment of Sutton, 828 So.2d 1081 (Fla. 2d DCA 2002); Commitment of Beikirich v. State, 828 So.2d 421 (Fla. 2d DCA 2002); Commitment of Smith v. State, 827 So.2d 1026 (Fla. 2d DCA 2002).