SILBERMAN, Judge.
 

 In this wrongful death and personal injury action, David A. Belniak seeks certio-rari review of a nonfinal order compelling him to answer certain deposition questions that he refused to answer based on his Fifth Amendment privilege against self-incrimination. We grant his petition in part, quash the trial court’s order, and remand for further proceedings.
 

 As the result of a motor vehicle accident on December 25, 2007, Raymond C. McWilliams, individually and as personal representative of the estate of Linda A. McWilliams, deceased (McWilliams), sued Belniak for wrongful death and personal injury. At that time, a criminal prosecution arising out of the same accident was pending for allegations of DUI manslaughter, vehicular homicide, DUI, and reckless driving with serious bodily injury. On August 25, 2009, while the criminal charges remained pending, McWilliams’ counsel took Belniak’s deposition. Belniak refused to answer a variety of questions based on his Fifth Amendment privilege against self-incrimination. McWilliams filed a motion to compel testimony from Belniak. The trial court conducted a hearing on the motion and entered an order, in pertinent part, directing as follows:
 

 ORDERED AND ADJUDGED that Defendant, David Belniak is to provide answers in the continuation of his deposition to the following line of questions:
 

 1. Whether David Belniak drinks alcohol.
 

 2. The healthcare providers of David Belniak.
 

 3. Whether David Belniak smokes cigarettes.
 

 4. Whether David Belniak has or is undergoing health care treatment for a[sic] mental disorders or defects, including any health conditions which would affect his memory.
 

 5. Whether David Belniak has filed any healthcare claims.
 

 6. Whether David Belniak has filed any claims with GMAC.
 

 On our certiorari review of the trial court’s nonfinal order compelling discovery, to be entitled to relief Belniak must establish that the trial court departed from the essential requirements of the law and caused irreparable injury to him for the remainder of the proceedings that cannot be remedied on appeal. See
 
 In re Commitment of Sutton,
 
 884 So.2d 198, 202 (Fla. 2d DCA 2004).
 

 A witness may assert the privilege against self-incrimination during discovery in a civil case when he has reasonable grounds to believe that his answers would provide a link in the chain of evidence necessary for a criminal conviction.
 
 See Hoffman v. United States,
 
 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951);
 
 Novak v. Snieda,
 
 659 So.2d 1138, 1140 (Fla. 2d DCA 1995). But it is not the witness who determines whether the answers fall within the privilege. Rather, “the determination of what answers may incriminate or tend to incriminate cannot be left solely up to the witness but is a matter which requires the exercise of the sound discretion of the trial court under all the circumstances of the case.”
 
 Delisi v. Smith,
 
 423 So.2d 934, 938 (Fla. 2d DCA 1982). “To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot
 
 *1285
 
 be answered might be dangerous because injurious disclosure could result.”
 
 Hoffman,
 
 341 U.S. at 486-87, 71 S.Ct. 814. The court must sustain the privilege unless it is
 
 “ ‘perfectly clear,
 
 from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s]
 
 cannot possibly
 
 have such tendency’ to incriminate.”
 
 Raass v. Borgia,
 
 644 So.2d 121, 122 (Fla. 2d DCA 1994) (quoting
 
 United States v. Goodwin,
 
 625 F.2d 693, 700-01 (5th Cir.1980) (emphasis in original)). Yet the caselaw also states that it must be a “substantial and ‘real’ ” threat of incrimination and not one that is “merely trifling or imaginary.”
 
 Marchetti v. United States,
 
 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968);
 
 see also State v. Mitrani,
 
 19 So.3d 1065, 1068 (Fla. 5th DCA 2009).
 

 Because McWilliams filed a motion to compel Belniak’s testimony on questions to which he invoked the Fifth Amendment, the trial court properly conducted a hearing on the motion.
 
 See De-Leo v. Wachovia Bank, N.A.,
 
 946 So.2d 626, 628 (Fla. 2d DCA 2007);
 
 Novak,
 
 659 So.2d at 1141. In connection with such a hearing, “[i]f the self-incriminating nature of the question is not clear from the face of the question, the party claiming the privilege may be required to provide sufficient information on which a trial court may find that a reasonable danger of incrimination exists.”
 
 Sutton,
 
 884 So.2d at 202. The trial court must consider each question individually and determine if the witness must answer the question or if the privilege against self-incrimination protects the witness from answering the question.
 
 See DeLeo,
 
 946 So.2d at 629;
 
 Novak,
 
 659 So.2d at 1141. An “order that compels a witness to answer all questions raised, even those which may incriminate the witness, should be considered overbroad and a departure from the essential requirements of law.”
 
 Magid v. Winter,
 
 654 So.2d 1037, 1039 (Fla. 4th DCA 1995).
 

 We initially note that the trial court did not address in its order the individual questions raised in the motion to compel. The trial court’s order directing Belniak to answer “the following line of questions” is overbroad in that the specified areas of inquiry include questions to which the privilege would apply. In fact, McWil-liams concedes several areas where the questioning must be limited, as discussed below.
 

 1. Whether David Belniak Drinks Alcohol.
 

 Belniak claims that in the context of the DUI and reckless driving charges, questions regarding whether he drinks alcohol involve a hazard of incrimination on their face. McWilliams contends that his counsel tailored a question to eliminate the realistic possibility of incrimination when counsel asked, “From the time that you turned 21 years old until December 1st, 2007, have you ever drank alcohol?” However, McWilliams concedes that to the extent the order compels answers regarding alcohol consumption on or around the date of the incident, December 25, 2007, the answer could help establish the element of impairment by alcohol consumption and/or recklessness needed to convict Belniak.
 

 We do not accept Belniak’s argument that any questioning as to whether he drank in the past creates a reasonable danger of incrimination regarding, for example, how alcohol affects him. Belniak contends that the effect alcohol has on him might be pertinent to the issue of recklessness. To the extent that the question about drinking alcohol in the past generates further questions, such as the effect alcohol has on him, claims of privilege as to
 
 *1286
 
 those further questions would have to be individually evaluated by the trial court.
 
 [1]
 

 2.
 
 The Healthcare Providers of David Belniak.
 

 On its face, the question asking which healthcare providers Belniak has treated with does not pose a reasonable danger of incrimination. Belniak argues that by revealing his healthcare providers he would be providing sufficient information to determine what health-related problems he has experienced. For instance, if a provider specialized in treating alcoholism, then a reasonable danger of incrimination would exist. McWilliams addresses this topic in his argument in response to category four below. He concedes that to the extent the order compels answers regarding the mental health topics at issue on or about the date of the accident, the answers could establish causation and/or recklessness needed to convict Belniak. McWilliams suggests that if tailored to exclude the date of the incident and a reasonable time surrounding the incident, the hazard of incrimination in answering which healthcare providers Belniak has treated with is not realistic. On remand, the trial court must consider whether particular questions may be answered without violating Belniak’s privilege against self-incrimination.
 

 3. Whether David Belniak Smokes Cigarettes.
 

 Again, McWilliams concedes that to the extent the order compels answers regarding smoking during the time of the accident, the answer could establish causation and/or recklessness needed to convict Belniak. For example, if it could be shown that Belniak was trying to light a cigarette at the time of the accident, the question of whether he was smoking at the time of the accident could provide a link to incriminating evidence. We remand for the trial court’s further consideration of this issue and any information that Belniak provides to establish the reasonable danger of self-incrimination.
 
 See Sutton,
 
 884 So.2d at 202.
 

 A
 
 Whether David Belniak Has or Is Undergoing Healthcare Treatment for Mental Disorders or Defects, Including Any Health Conditions Which Would Affect His Memory.
 

 Belniak asserted his privilege as to questions regarding when he had been taking Cymbalta and Xanax, whether he had ever been diagnosed with a head injury, whether he suffered from an anxiety condition that required medical attention, whether he had been treated for any memory problem, and whether he had been treated for any mental defect. McWil-liams concedes that to the extent the order compels answers regarding the mental health topics at issue on or about the date of the accident, the answers could establish causation and/or recklessness needed to convict Belniak in the criminal case. McWilliams argues that when tailored to exclude the date of the incident and a reasonable time surrounding the incident, the hazard of incrimination in answering the mental health and related questions is not realistic. We agree that, as stated, the court’s category four is overbroad and that the trial court departed from the essential requirements of the law in compelling Belniak to answer questions as to this broad category.
 

 With respect to whether he had been treated for a memory problem, McWil-
 
 *1287
 
 liams’ counsel argued at the hearing that the question was asked because during the deposition Belniak was having trouble remembering things and he repeatedly responded, “I don’t remember.” Whether Belniak had or had not been treated for a memory problem would not itself create a reasonable danger of incrimination for the DUI or reckless driving offenses, and the trial court properly ordered that Belniak answer that question. To the extent that his answers might generate further questions, any privilege claims regarding those further questions would have to be evaluated by the trial court.
 

 With respect to treatment for a head injury or other mental defects, as McWil-liams concedes, this is potentially relevant to whether it was reckless for Belniak to operate a motor vehicle at the time of the accident. Answers to questions about treatment for a head injury or other mental defects without limitation pose a reasonable danger of incrimination. Thus, the trial court departed from the essential requirements of the law in ordering Beln-iak to answer questions without considering a limitation as to the time frame or individual questions.
 

 The trial court’s ruling as to this fourth area of inquiry also appears to require Belniak to answer questions regarding when he had been taking Cymbalta and Xanax as well as whether he had been treated for anxiety. These questions are relevant to the DUI and reckless driving charges. At the hearing, Belniak’s counsel pointed out that the preliminary police investigation indicated that Belniak tested positive for alcohol, Xanax, and another prescription drug. Thus, questions about taking Xanax and Cymbalta, albeit legally, create a reasonable danger of incrimination and must be limited to a reasonable time frame.
 

 5. Whether David Belniak Has Filed Any Healthcare Claims.
 

 Category five is also very broad. Like the issue of treatment in category four above, it creates a reasonable danger of incrimination if, for example, Belniak made a healthcare claim for a head injury and such an injury impacted his ability to drive on the day in question. The specific question listed in the motion to compel is “When is the last time that you had an insurance company pay for any health treatment that you’ve received?” McWil-liams concedes that to the extent the order compels answers regarding the filing of an insurance claim as a result of this accident, the answer could establish causation and/or recklessness needed to convict Belniak. Thus, like category four, the trial court departed from the essential requirements of the law in compelling Belniak to answer without addressing whether the privilege may be implicated by individual questions.
 

 6. Whether David Belniak Has Filed Any Claims With GMAC.
 

 McWilliams concedes that to the extent the order compels answers regarding the filing of an insurance claim as a result of the accident on December 25, 2007, the answer could establish causation and/or recklessness needed to convict Belniak. McWilliams argues that it tailored a question to eliminate the realistic possibility of incrimination: “Other than for the automobile accident that we’re here for today which occurred on December 25th, 2007, have you ever made a claim for insurance benefits through the GMAC auto policy?”
 

 Belniak contends that prior auto policy claims could also create a link in the chain of evidence to incriminating factors based on information that he may have provided to an insurance company regarding such claims. However, nothing in the record
 
 *1288
 
 reflects that Belniak provided sufficient information to the trial court to fully evaluate his privilege claim. But because the trial court’s order is overbroad, as McWil-liams concedes, we remand for the trial court to reconsider this issue.
 

 In summary, we conclude that the trial court’s order is overbroad because it required Belniak to answer questions that, at least in part, would be covered by the Fifth Amendment privilege against self-incrimination and therefore departed from the essential requirements of the law. We grant the petition for writ of certiorari in part, as explained above, quash the order, and remand for the trial court to reconsider the privilege issue and to enter a new order.
 

 Petition granted in part, order quashed, and remanded.
 

 CASANUEVA, C.J., and VILLANTI, J., Concur.
 

 [1]
 

 . The trial court may want to consider appointing a special master to handle objections during the course of the deposition so as to avoid resolving objections in piecemeal fashion at additional hearings.