WOLF, J.
Appellant challenges a judgment that found him in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) for receiving payments based on phony invoices his company sent to over 1,000 corporations. The order on appeal directed appellant to repay each of the defrauded consumers, totaling $2,587,771.29, and to pay civil penalties in the amount of $2,116,500. In addition, the order directed appellant to repatriate all foreign assets and to provide an accounting within 90 days of all assets located outside the country. On appeal, appellant raises two issues. We affirm, but write to address each issue.
First, appellant argues the trial court erred in denying his motion to dismiss the underlying complaint, asserting the Office of the Attorney General (OAG) erroneously failed to provide the names of the defrauded consumers. However, there exists no procedural rule, statutory provision, or controlling case requiring the OAG to name consumers on whose behalf it is litigating a FDUTPA action.
Section 501.207(l)(c), Florida Statutes (2006), authorizes the OAG to bring an action “on behalf of one or more consumers or governmental entities for the actual damages caused by an act or practice in violation of this part.” In addition, section 501.207(3) authorizes a trial court to “make appropriate orders ... to reimburse consumers or governmental entities found to have been damaged.” There is no requirement in chapter 501 that the OAG list each allegedly affected consumer. Further, the only civil pleading requirements state the complaint must (1) provide an allegation of ultimate facts which state a cause of action and (2) provide well-pled facts upon which a damage award is based. See Fla. R. Civ. P. 1.110(b) (2006); see also Hooters of Am., Inc. v. Carolina Wings, Inc., 655 So.2d 1231, 1233 (Fla. 1st DCA 1995) (stating a defendant may only be ordered to provide relief for which it specifically prayed) (citing Freeman v. Freeman, 447 So.2d 963, 964 (Fla. 1st DCA 1984)). Here, the complaint meets both of these pleading requirements.
Moreover, none of the legislative notes on the statute evidence that such a requirement was contemplated when the statute was created. Fla. H.R. Comm, on Governmental Operations, HB 1915 (1973) Staff Analysis 1 (final May 3, 1973) (on file with State Archives). There is, however, a stated intent that state enforcement of FDUTPA be consistent with federal enforcement. § 501.202(3), Fla. Stat. (2006). The federal government does not require that consumers be named in federal deceptive trade actions. See Maryland v. Universal Elections, 787 F.Supp.2d 408, 418 (D.Md.2011) (holding the federal Telephone Consumer Protection Act does not require the attorney general “include individual names of persons who received calls”).
The only cited support for appellant’s position comes from State ex rel. Reno v. Barquet, 358 So.2d 230 (Fla. 3d DCA 1978). In Barquet, the Third District reversed a motion to dismiss for failure to state a cause of action in a very short opinion. Id. The underlying case arose from the OAG’s filing of a FDUTPA complaint alleging defendants had engaged in the unlawful practice of medicine by performing abortions. Id. at 231. The OAG’s *80 complaint was not included in the opinion; however, the opinion noted that the question before the court was “whether the State Attorney may obtain damages on behalf of the State” pursuant to FDUTPA. Id. In concluding the OAG could not, the court stated in pertinent part:
501.207(l)(c) explicitly provides all actions for actual damages shall be brought on behalf of an aggrieved consumer. The first Complaint was dismissed for failure to name aggrieved consumers and the Amended Complaint does not remedy this omission. The State, in its memorandum to this Court at page 42, states it is not seeking any damages in its own name yet that is what their Complaint expressly requests. It is not possible for both the State and aggrieved consumers to obtain actual damages suffered by the consumers; to hold otherwise would subject Defendants to double damages.
Id* The parties dispute the breadth of the above holding. Appellant asserts this holding requires that all FDUTPA complaints on behalf of consumers must list the actual consumers to be reimbursed because the opinion states the complaint failed to “name aggrieved consumers.” Id. OAG asserts this language is dicta and the broader holding only requires the OAG to assert in the complaint that it is seeking damages on behalf of consumers, not itself. We agree with the OAG’s reading of the case. The opinion explains the OAG may not obtain damages on its own behalf and further criticizes the OAG for attempting to obtain actual damages for both the State and consumers. Id. Thus, the broader concern of the opinion was the OAG’s failure to assert it was litigating on behalf of consumers, not that specific consumers were missing from the complaint. Id. Thus, Barquet is distinguishable.
As noted by the OAG, the requirement to list every potential affected consumer could stifle further enforcement and place a heavy burden on the enforcing body. Furthermore, the practical concerns for creating such a requirement are readily apparent. In FDUTPA actions, the OAG, as an enforcement body, is entitled to litigate on behalf of injured consumers. Depending on the alleged violation, the list of affected consumers could reach much higher than the 1,411 consumers alleged to have been injured in the underlying action. Requiring that each consumer be named in the complaint for these types of actions would unnecessarily burden the courts and the enforcing body. Thus, because there exists no such requirement in Florida law, and matters of policy do not support reversal, we affirm.
Appellant next argues the order requiring him to transfer all international assets in his control to the States and provide an accounting of those assets violates the Fifth Amendment of the U.S. Constitution and article I, section 9 of the Florida Constitution. “To meet the intended purpose of the protection against self-incrimination ... this court has broadly and independently construed the protections .... ” Rigterink v. State, 66 So.3d 866, 889 (Fla.2011).
Further, “[a] witness may assert the privilege against self-incrimination during discovery in a civil case when he has reasonable grounds to believe that his answers would provide a link in the chain of evidence necessary for a criminal conviction.” Belniak v. McWilliams, 44 So.3d 1282, 1284 (Fla. 2d DCA 2010) (citing Hoffman v. United States, 341 U.S. 479, 486, 71 *81 S.Ct. 814, 95 L.Ed. 1118 (1951); Novak v. Snieda, 659 So.2d 1138, 1140 (Fla. 2d DCA 1995)). However, it is not for the witness to determine whether the answers are protected; it is a decision left to the sound discretion of the trial court after considering the circumstances of the case. Id. (citing Delisi v. Smith, 423 So.2d 934, 938 (Fla. 2d DCA 1982)). In addition, to assert the privilege there must be a “substantial and ‘real’ ” threat of incrimination and not one that is “merely trifling [sic] or imaginary.” Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). See also State v. Mitrani, 19 So.3d 1065, 1068 (Fla. 5th DCA 2009). Because of this requirement, “[a] blanket assertion of the Fifth Amendment right is insufficient to invoke the privilege against self-incrimination.” Urquiza v. Kendall Healthcare Group, Ltd., 994 So.2d 476, 477 (Fla. 3d DCA 2008).
While post-judgment assertion of the privilege is authorized in Florida where questions asked in post-judgment discovery are incriminating, the privilege must be considered in relation to the questions asked. DeLeo v. Wachovia Bank, N.A., 946 So.2d 626, 629-30 (Fla. 2d DCA 2007) (reversing for the trial court to consider whether appellant could assert the Fifth Amendment when asked post-judgment deposition questions and ordering the trial court to consider the privilege as to each individual question); see also Rainerman v. Eagle Nat. Bank of Miami, 541 So.2d 740, 741 (Fla. 3d DCA 1989) (holding borrower was entitled to assert privilege against self-incrimination in post-judgment deposition held to aid in execution of final judgment where answers to the questions potentially bore on appellant’s criminal liability arising out of illegal banking transactions).
Here, appellant argues the repatriation of assets and documents, as well as the accounting of those assets, “could provide a link in the chain of evidence that could lead to criminal charges against [appellant].” This blanket assertion is insufficient to support the application of the privilege. This is not a situation in which it is readily apparent that the repatriation and accounting would incriminate appellant further. He offers no further explanation, either in the trial court or in his brief, as to how the requested action could lead to self-incrimination. Appellant was accused of defrauding corporations with phony invoices for over $2,000,000, and the trial court ruled appellant was civilly liable for that conduct. While post-judgment assertion of the privilege is authorized in Florida, the existence of money in an international account does nothing to further incriminate appellant; the trial court’s order is simply an attempt to reimburse the consumers who were defrauded. See, e.g., United States v. Sellers, 848 F.Supp. 73, 77 (E.D.La.1994) (rejecting a similar claim where the government’s attempt to repatriate tainted assets was not used as evidence in trial and was an attempt to make the victim whole). There is no indication of why the production of these items would bear on appellant’s potential criminal liability for defrauding consumers over and above the evidence already presented at trial regarding his guilt. For these reasons, we affirm.
AFFIRMED.
HAWKES and ROBERTS, JJ., concur.

 Since this opinion, the statute has been changed to allow the OAG to seek damages on behalf of a state agency. See § 501.207, Fla. Stat. (2006).